Temple University—of the Commonwealth System of Higher Education, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued April 2, 1984, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and COLINS, sitting as a panel of three.

*Matthew M. Strickler,* with him, *Geoffrey A. Kahn, Ballard, Spahr, Andrews & Ingersoll,* for petitioner.

*Stanley Slipokoff,* with him, *John A. Kane,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., July 6, 1984:

Temple University (Temple), a member of the Commonwealth System of Higher Education, has appealed a final adjudication by the Department of Public Welfare (Department) disallowing certain claims for reimbursement of costs under Pennsylvania's Medical Assistance (Medicaid) Program, Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended,* 62 P.S. §443.1.[1]

---

[1] The Pennsylvania Medical Assistance Program (Medicaid) is a program jointly funded by the state and federal governments to provide medical services to persons who could not otherwise afford

Temple is the owner and operator of Temple University Hospital (Hospital), a public general hospital and a provider of inpatient medical care to low-income persons under the Pennsylvania Medicaid Program. As a provider, Temple is entitled to reimbursement by the Commonwealth of certain allowable costs associated with its provision of services to Medicaid patients.[2] The Pennsylvania Department of Public Welfare, the agency authorized to administer Pennsylvania's Medicaid Program, conducts annual audits of Temple's recordkeeping and cost reports, and based on those audits, determines the level of reimbursement to be made.

In this appeal, covering three fiscal years, Temple contends that the Department improperly disallowed reimbursement for interest expenses incurred in order to satisfy the operational needs of the Hospital. Temple also contends that the Department improperly

adequate medical care. Pursuant to Title XIX of the Federal Social Security Act, 42 U.S.C. §§1396 *et seq.*, federal monies are available to states which present and adhere to a plan for provision of medical assistance which meets federal standards and is approved by the United States Secretary of Health and Human Services (formerly, Health, Education and Welfare). Federal guidelines afford the states wide latitude in determining the types of medical services which shall be covered by their plans. However, the federal statute has been construed to require that states receiving federal Medicaid funds provide at least those services which are "medically necessary" for the health of patients financially eligible for the program. *See Marsh v. Department of Public Welfare*, 48 Pa. Commonwealth Ct. 216, 409 A.2d 926 (1979).

2 Section 443.1 of the Public Welfare Code states:

The following medical assistance payments shall be made in behalf of eligible persons whose institutional care is prescribed by physicians:

(1) The reasonable cost of inpatient hospital care, as specified by regulations of the department adopted under Title XIX of The Federal Social Security Act and certified to the department by the Auditor General. . . .

determined the formula for reimbursement for physician services provided by staff of the Medical School of Temple University (Medical School).

Before addressing the substantive issues, the unusual procedural history of this case warrants recitation. The case began with an audit by the State Auditor General of Temple's Medical Assistance cost reports for the twelve-month periods ending June 30, 1975 and June 30, 1976. The Auditor General disallowed portions of Temple's asserted costs for interest expense on the grounds that Temple's accounting methods did not provide sufficient verification for all of the expenses claimed. The Auditor General's report was subsequently adopted by the Department for purposes of determining Temple's entitlement to reimbursement under the Medicaid Program. Temple appealed from the determination, and was granted a hearing on December 13, 1979 before Harvey S. Miller, a hearing examiner attached to the Department's Office of Hearings and Appeals.[3] Examiner Miller issued his findings and recommendation that Temple's appeal be sustained. That recommendation, however, was never acted upon by the Office of Hearings and Appeals or by the Secretary of Welfare because the Department, on November 25, 1980, filed a petition to reopen the proceedings and consolidate them with an appeal which Temple had lodged from the Department's disallowance of claims for reimbursement for the fiscal year ending June 30, 1977. In the more recent appeal, Temple challenged the disallowance of a portion of its claim for interest expense as well as the

---

[3] This hearing was scheduled pursuant to the order of the Court, which in *Temple University v. Auditor General*, 44 Pa. Commonwealth Ct. 283, 403 A.2d 1048 (1979), held that the Department's determination of the amount of interest to be treated as a reimburseable cost was an adjudication for purposes of judicial review under the Administrative Agency Law, 2 Pa. C. S. §§501-508, 701-704.

formulas applied by the Department to reimburse for emergency-room and staff physician services.

The Office of Hearings and Appeals denied the Department's petition to reopen and consolidate the proceedings, on the grounds that the Department had asserted no basis which would justify granting the petition. Notwithstanding the denial by the Office of Hearings and Appeals of the Department's petition, then-Secretary of Welfare Helen B. O'Bannon, on December 31, 1980, granted the Department's petition, and ordered the appeal for fiscal years 1974-1975 and 1975-1976 reopened and consolidated with the appeal for fiscal year 1976-1977. In ordering the reopening and consolidation, the Secretary stated:

The issue at hand is one that continues to be challenged. Additional information and consolidation appear to be in the public interest. However, I hereby direct the hearing examiner to rule on the accuracy, validity and reasonableness of the interest allocation apportionment used by the agent for the Auditor General. This finding shall be an explicit part of any subsequent decision of the Office of Hearings and Appeals in the *now* consolidated Temple case. (Emphasis in original.)

The consolidated appeals were assigned to Examiner John P. Currie, who, after further hearing, issued a recommendation denying Temple's appeal with respect to the allocation of interest costs and the formula for calculating reimbursement for individual patient services performed by staff physicians, but sustaining Temple's appeal as to reimbursement for emergency-room services. The Office of Hearings and Appeals, on March 8, 1982, entered a final order adopting the examiner's recommendation. The Secretary denied cross-petitions for reconsideration. This appeal by Temple followed.

*Interest Expense*

The substantive difficulty relative to Temple's claim for reimbursement of interest expense arose from the fact that the Hospital, an operating division of Temple, has no separate corporate existence.[4] As such, the Hospital has no capacity to borrow the substantial sums it requires for working capital; such borrowing can only be done by Temple on behalf of the Hospital. Up until February 1, 1977, monies borrowed by Temple to cover the operational needs of the Hospital were not specially earmarked or segregated for that purpose. Rather, the borrowed funds were maintained in accounts with Temple's general corporate funds. When monies were needed to meet the financial obligations of the Hospital, Temple would make interest-free "loans" to the Hospital of the funds Temple had borrowed. From 1975 onward, each transfer of funds from Temple's general accounts to or on behalf of the Hospital was evidenced by a demand note, and was reflected on the Hospital's books as a loan payable to Temple. There is no dispute over the fact that these notes did not represent "loans" in the conventional sense, since Temple and the Hospital are the same corporate entity, but rather served as an accounting device for intracorporate transfers of funds. There also appears to be little controversy that the bank loans obtained by Temple during the period in question were primarily and substantially for the working capital needs of the Hospital. The divergence of opinion resides in whether Temple's accounting methodology allowed the Auditor General and the Department to distinguish monies borrowed by Temple for the operational needs of the Hospital from funds

---

[4] The federal Social Security regulations, at 42 C.F.R. §405.419 (a), provide that "[n]ecessary and proper interest on both current and capital indebtedness is an allowable cost.

borrowed and used by Temple for other corporate obligations.

Examiner Miller, based on voluminous documentation and expert testimony presented by Temple, concluded that Temple had shouldered its burden of substantiating its entire claim for interest expense for fiscal years 1974-1975 and 1975-1976. Upon reopening and consolidation of the proceeding with Temple's appeal from a partial disallowance of its claim for reimbursement of cost claimed for fiscal year 1976-1977, Examiner Currie concluded that Temple's accounting methodology was inadequate to allow complete differentiation between bank loans applied to the legitimate needs of the Hospital and those applied to other purposes. Recognizing, however, that only a small portion of the sizeable loans made by Temple was applied to non-Hospital purposes, Examiner Currie concluded that it would be improper to disallow all interest expense for failure to provide a specific, verifiable audit trail. He therefore adopted an interest allocation formula, which was recommended by the Auditor General—a formula which the examiner considered "conjectural," but "not unreasonable" under the circumstances.[5]

Earlier in this opinion, we recited at considerable length the procedural history of this appeal. We believe that a procedural irregularity reflected in that history dictates a remand of this case, at least insofar as the issue of the reimbursement of interest expense

_____

[5] The disparity between the interest charges claimed by Temple and the amount reimbursed is as follows:

|  | Claimed | Paid | Disputed |
|------|-----------|-----------|------------|
| 1975 | $3,651,691 | $2,542,332 | $1,109,359 |
| 1976 | $2,715,264 | $2,199,969 | $ 515,295 |
| 1977 | $ 744,115 | $ 534,061 | $ 210,054 |
|  |  |  | $1,834,708 |

is involved. The procedural irregularity to which we refer is the Secretary's reopening of the appeal of the 1974-1975 and 1975-1976 determination and consolidation of that appeal with Temple's appeal of the 1976-1977 determination. That action, taken by the Secretary months after the original appeal record had been closed and one month after Examiner Miller issued his findings and recommendation in favor of Temple, exceeded the Secretary's discretionary powers to reopen administration proceedings.

In arguing that the Secretary was authorized to open the record, the Department cites 1 Pa. Code §35.233, which provides:

> At any time prior to the issuance by the agency head of an adjudication in a proceeding the agency head, after notice to the participants, may without motion reopen the proceeding *for the reception of further evidence,* if the agency head has reason to believe that conditions of fact or law have so changed as to require, or that the public interest requires, the reopening of such proceeding. (Emphasis added.)

Neither the Secretary in her order to reopen and consolidate, nor the Department in its brief, specify what further evidence was necessary to decide the appeal. Rather, the Department contends that the Secretary's action was in the public interest because of the amount of money in dispute, because of the length of the administrative record, because the issue was one of first impression, and because of the likelihood of recurring appeals on the same issue. None of these reasons comports with the requirement of the Code that the reopening of the proceeding be for the purpose of augmenting the evidentiary record. Furthermore, even assuming that the Department is correct in characterizing the significance of the issue involved, it is hardly

clear how the public interest was served by reopening a record which required months to complete[6] or duplicating the effort which one hearing officer had already expended in adjudicating the appeal.

The Department argues that Temple was not prejudiced by the Secretary's order. This argument defies reason. There is no question that Temple was prejudiced by being denied the benefit of factual findings favorable to it—findings which but for the Secretary's order to reopen and consolidate, would have been binding on the Department pursuant to 55 Pa. Code §275.4(4), which states:

(4) Review by the Secretary. Review by the Secretary may be made under the following circumstances:

(i) The Director of the Office of Hearings and Appeals will affirm, amend, reverse, or remand a Hearing Examiner's decisions. Reversal by the Director will be confined to matters of law and established departmental policy; no findings of fact made by the Hearing Examiner will be subject to reversal. The Director may, however, remand the case to the Hearing Examiner for further findings of fact. If the decision of the Hearing Examiner is reversed, the reasons for such reversal will be provided to the appellant in writing by the Director of the Office of Hearings and Appeals.

It is also fair to assume that Temple drew no consolation in having final administrative action on its claims for 1974-1975 and 1975-1976 delayed by more than a year by virtue of the Secretary's action. We decline Temple's invitation to speculate on the Secretary's motives. Suffice it to say, the procedural rights

---

[6] Although the hearing was held on December 13, 1979, the record remained open until August of 1980 to allow other submissions by the parties.

accorded providers and other claimants by 55 Pa. Code §275.4 would be sorely jeopardized if the binding effect of a hearing officer's findings could be circumvented on the basis of no more than an assertion by the Secretary that the public interest would be served. For these reasons, we find it necessary to vacate the Department's decision with regard to Temple's claim for interest expense for fiscal years 1974-1975 and 1975-1976, and remand this matter for reinstatement of the recommendation and findings of Examiner Miller. The Department shall then act on Examiner Miller's decision in accordance with 55 Pa. Code §275.4(4) as if there had been no reopening and consolidation of the case before a second hearing officer.

Furthermore, we find it necessary to remand the determination of Temple's entitlement to interest expense for fiscal years 1976-1977. This action is dictated by the fact that Examiner Currie's analysis of the interest expense issue is not bifurcated by years; furthermore, it is clear from his adjudication that his allocation for fiscal year 1976-1977 was affected by what he considered unverified balances from preceding periods. Therefore, we remand this portion of the Department's order for such further hearing and reconsideration as is necessary to reach an independent adjudication of Temple's entitlement to interest reimbursement for fiscal year 1976-1977.

*Reimbursement For Physician Services*

Temple contends that the Department erred in determining its entitlement to reimbursement for services rendered to patients of the Hospital by physicians employed by the Medical School on the basis of the cost of those services—*i.e.* the cost of the physicians' direct salaries, applicable fringe benefits, employer contribution to F.I.C.A. taxes, unemployment taxes and workmen's compensation coverage. *See*

*Medical Provider Reimbursement Manual* at §2148.2. Temple argues that, rather than on a cost basis, reimbursement for these services should be on the basis of the charge paid by the Hospital to the Medical School in accordance with the fee schedule which was adopted between the Hospital and Medical School. In support of this argument, Temple cites a general provision of the federal Provider Reimbursement Manual which allows for reimbursement on a "reasonable charge basis" of medical and surgical services rendered to an individual patient. *Provider Reimbursement Manual* at §2108.1. The Department, however, relies—properly, we think—on a section of the federal Social Security regulations which specifically addresses reimbursement of costs incurred by a teaching hospital for services rendered by a medical school. That section, found at 42 C.F.R. §405.465(c), states:

(c)  Reasonable costs incurred by a teaching hospital for the services rendered by a medical school or related organization in a hospital.

An amount not in excess of the reasonable cost (as defined in paragraphs (c)(1) and (2) of this section) incurred by a teaching hospital for services rendered by a medical school or organization related thereto within the meaning of §405.427 for certain costs to the medical school (or such related organization) in rendering services in the hospital are reimbursable to the hospital by the health insurance program provided that such costs would be reimbursable if incurred directly by the hospital rather than under such arrangement.

(1)  Reasonable costs of direct medical and surgical services (including supervision of interns and residents in the care of individual patients) rendered in a teaching hospital by

physicians on the faculty of a medical school or organization related to the medical school.

(i) In situations where the medical school (or organization related to the medical school) and the hospital are related by common ownership or control in accordance with §405.427, the cost[s] of such services are allowable costs to the hospital under the provisions of §405.427 and the reimbursable costs to the hospital are determined under the provisions of this section in the same manner as the costs incurred for physicians on the hospital staff and without regard to payments made to the medical school by the hospital.

Given the undisputed facts that the Hospital is a teaching hospital, and that the services in question were rendered by the staff of an entity which is *both* a medical school and a related organization,[7] Temple is hardpressed to convince us that this section is not controlling.

Temple, apparently recognizing the tenuousness of its argument that §405.465(c) does not control this issue, nevertheless argues that the regulations unconstitutionally discriminate between teaching and non-

---

[7] 42 C.F.R. §405.427(b) defines the term "related to the provider by common ownership or control":

(1) Related to provider. Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization furnishing the services facilities, or supplies.

(2) Common ownership. Common ownership exists when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.

(3) Control. Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

teaching hospitals. This argument is equally unconvincing. Our reading of the federal regulations persuades us that, even were the Hospital not a teaching institution, it would be entitled to be reimbursed for no more than the reasonable cost of the services provided to it by the Medical School. Regardless of whether a hospital is a teaching hospital, 42 C.F.R. §405.427 governs its entitlement to reimbursement for services, facilities and supplies furnished to it by a related organization. Section 405.427(a) states:

> (a) Principle. Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such costs must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere.

Since the Department's action was authorized under *either* 42 C.F.R. §405.465(c) or §405.427(a), it is unnecessary to determine whether the regulations which apply specifically to teaching hospitals unconstitutionally discriminate against that category of providers. Accordingly, we conclude that the Department applied the proper formula for determining Temple's entitlement to reimbursement for services rendered to the Hospital by its Medical School.[8]

The decision of the Department regarding Temple's entitlement to reimbursement of interest ex-

---

[8] Our decision is without prejudice to Temple being afforded the opportunity to seek reconsideration by the Auditor General with respect to certain "indirect" costs which Temple failed to include in its original costs reports for fiscal year ending June 31, 1977. The parties stipulated on the record that such reconsideration would be available to Temple if this court affirmed the Department's application of a reasonable cost basis for reimbursement for services rendered by the Medical School staff.

penses is therefore vacated and remanded for further proceedings consistent with this opinion. The decision is affirmed to the extent that it determines Temple's entitlement to reimbursement for physician services rendered by the Medical School of Temple University.

## ORDER

AND Now, this 6th day of July, 1984, the decision of the Pennsylvania Department of Public Welfare regarding the petitioner's entitlement to reimbursement of interest expenses is vacated and remanded for further proceedings consistent with the foregoing opinion. The decision is affirmed insofar as it applies to reimbursement for physician services rendered by the Medical School of Temple University.