513 A.2d 495

Northwestern Institute of Psychiatry, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Submitted on briefs June 11, 1986, to President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY and COLINS.

*Christopher F. Stouffer,* with him, *Jeffrey L. Pettit, Hepburn, Willcox, Hamilton* & *Putnam,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, for respondent.

OPINION BY JUDGE DOYLE, July 24, 1986:

This is an appeal by Northwestern Institute of Psychiatry (Provider) from an order of the Executive Deputy Secretary[1] (Secretary) of the Department of Public Welfare (DPW). The appeal pertains to the denial by the Secretary of reimbursement of certain costs associated with patient services under Pennsylvania's Medical Assistance (Medicaid) Program, Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended,* 62 P.S. §443.1.

Initially, the Auditor General denied Provider reimbursement and it appealed. A DPW hearing attorney was designated to take testimony. The hearing attorney issued proposed findings of fact and an accompanying recommendation the substance of which can be summarized as follows:

---

[1] We presume that the Deputy Secretary is acting as the department head pursuant to Section 206 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §66.

1. Costs for operation of a snack bar which services patients and visitors should be allowed.

2. Costs for operation of a barber/beauty shop should be allowed.

3. Costs for employee group activities in the form of a Christmas party, a softball league, and a fall festival should be allowed.

4. Costs of depreciation for the Director of the Institute's automobile should be denied.

The hearing attorney's recommendations were then forwarded to the Acting Director of the Office of Hearing and Appeals (Director) who adopted the recommendation of the hearing attorney with respect to the snack bar, barber/beauty shop, and automobile issues but rejected his recommendation with respect to the employee group activity issue finding that the activities were social in nature rather than related to meritorious service or longevity of care. The Acting Director then issued a final order.

The Office of Medical Assistance petitioned the Secretary for reconsideration on the snack bar and barber/beauty shop issues only. Provider petitioned the Secretary for reconsideration on the employee group activity issue only. The Secretary granted reconsideration and on September 6, 1983, entered an order which affirmed the Director on the barber shop and employee group activity issues. With respect to the snack bar issue the Secretary wrote:

[The Secretary] finds persuasive [Provider's] argument that costs related to the operation of the Snack Bar are necessary and proper costs related to patient care. However, a review of the record in this matter reveals that the Snack Bar is not used solely by patients of the facility. Rather, the services are available also to staff members and visitors to the facility. It is therefore necessary to

determine what portion of the allocated costs can be directly attributable to the provision of patient care. Therefore, this issue is remanded to the Office of Hearings and Appeals for a determination of what portion of Snack Bar costs are directly attributable to patient care.

The Secretary's order also indicated that this was a final order appealable to this Court. Provider so appealed and by order dated December 15, 1983 this Court quashed the appeal "without prejudice to [Provider's] right to file a timely petition for review following all proceedings necessitated by the September 6, 1983, remand order."

The case was then remanded to the hearing attorney who received memoranda from both parties. He determined that no records were kept by Provider as to the proportionate use of the snack bar by patients, visitors and employees. Both attorneys and the hearing attorney also agreed that the information the remand order sought was not capable of determination. Upon review of the hearing attorney's determination, the Secretary determined that not all snack bar costs are reimbursable as a matter of law. He wrote, "[t]o the extent that unrecovered costs are the result of meals or refreshments provided to any persons other than patients, except for [Provider's staff] provided that the costs are accounted for as bona fide fringe benefits in accordance with Section 2145 of the Medicare Provider Reimbursement Manual (HIM-15), all such costs are unallowable." The Secretary, recognizing Provider's admission that its records were not kept so as to permit separation of which costs were related to patients, thus denied the reimbursement for snack bar costs in its entirety.

This final order was appealed to our Court and by order dated May 16, 1986 the case was ordered submit-

ted before the Court en banc. No cross appeal was filed and hence only two substantive issues present themselves for our review: (1) Did the Secretary properly disallow the snack bar costs? (2) Did the Secretary properly disallow the group activity costs?

Before considering these issues, however, a preliminary matter demands attention. Phrased in general terms, we must assess the proper scope of review of the Director and the Secretary in a provider appeal. Provider relies upon 55 Pa. Code §275.4(h) for the proposition that findings of *fact* made by a hearing examiner are not subject to reversal by either the Secretary or the Director. An examination of Chapter 275 of 55 Pa. Code discloses that this chapter, entitled "Appeal and Fair Hearing," sets forth detailed procedures for the conduct of hearings and departmental review, including the establishment of a hearing examiner as the sole fact finder. But Chapter 275 is, itself, only a chapter within Part II of 55 Pa. Code which Part pertains *solely* to public assistance matters, and careful scrutiny of Chapter 275 reveals that that Chapter relates to the hearing rights of welfare *recipients* and *applicants* for public assistance, not the hearing rights of *providers*. Thus, this Chapter is not the applicable law in the instant case.

The hearing and intra-agency review occurring here is instead conducted pursuant to the General Rules of Administrative Practice appearing in 1 Pa. Code §§35.1-35.251. Under these procedures the Director as agency head[2] can, herself, hold hearings *or* designate that duty to a "presiding officer." 1 Pa. Code §35.123 and §35.185. When a presiding officer is so designated, as was the hearing attorney in this case, he can be ordered by the Director to prepare, *inter alia,* a *proposed*

---

[2] We presume that the Director is a duly authorized agent of the Secretary. *See* Section 206 of the Administrative Code of 1929, 71 P.S. §66.

report. *See* 1 Pa. Code §35.202. That report must contain, *inter alia,* findings of fact and conclusions. 1 Pa. Code §35.205. Nowhere in these procedures is the hearing attorney given authority to file an order, and he did not in fact do so in this case. The first order here was issued by the Director and was final subject only to an application for rehearing or reconsideration pursuant to 1 Pa. Code §35.226. Most important for our purposes, nowhere in these procedures is there *any* language which establishes the hearing attorney as the fact finder. His powers are limited to proposals and recommendations with the fact finding power remaining with the Director. We thus hold that where a *provider* hearing is conducted by a hearing attorney the finder of fact is the Director, not the hearing attorney. We recognize that this determination is inconsistent with statements made in *Klingerman Nursing Center, Inc. v. Department of Public Welfare,* 73 Pa. Commonwealth Ct. 470, 458 A.2d 653 (1983) and *Temple University—of the Commonwealth System of Higher Education v. Department of Public Welfare,* 83 Pa. Commonwealth Ct. 516, 480 A.2d 1267 (1984) and to the extent that *Klingerman* and *Temple* differ from our holding here they are specifically overruled. In addition, we cite with approval *Westmoreland Manor v. Department of Public Welfare,* 91 Pa. Commonwealth Ct. 155, n.9, 496 A.2d 1282 n.9 (1985). Having disposed of this preliminary matter we now proceed to examine the substantive issues raised.

The hearing attorney recommended allowing the snack bar costs, a determination adopted by the Director. The Secretary reversed this determination based upon what he perceived to be an *error of law.* Thus, we need not determine today whether the Secretary has the power to reverse a factual finding of the Director in a proceeding conducted pursuant to Chapter 35 of 1 Pa. Code because the Secretary here did not reverse the

*findings* that services were provided to visitors, patients and employees, nor did he reverse the subsequent finding that allocation of these respective services could not be documented. Rather, the Secretary reversed the *legal conclusion* that *all* costs of the snack bar were directly related to patient care. Our scope of review of course includes errors of law, Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, and, accordingly, we must decide whether the Secretary committed such an error.

The applicable principle pertaining to reimbursement for inpatient psychiatric hospital services appears in Section 9426.523 of the Medical Assistance Manual. Section 9426.523 cross references Section 9421.42 which provides for reimbursement of reasonable costs of inpatient care. Section 9421.42 appeared as a proposed rule in 6 Pa. B. 2885 (1976) and was subsequently adopted at 7 Pa. B. 904 (1977). In addition, the reasonable cost principle is codified at 42 C.F.R., Chapter 405, Subpart D. Pursuant to 42 C.F.R. §405.451(a) all payments to providers must be based upon reasonable costs for the services covered and related to the care of beneficiaries under the program. Reasonable costs include "all necessary and proper expenses incurred in rendering services." 42 C.F.R. §405.451(c)(3). Necessary and proper costs are ones which are "appropriate and helpful in developing and maintaining the operation of patient care facilities and activities." 42 C.F.R. §405.451(b)(2). Regulation 405.451(c)(3) further provides, "where the provider's operating costs include amounts not related to patient care . . . such amounts will not be allowable." In addition, 42 C.F.R. §405.453 and §405.406(a) establish that a provider is responsible for maintaining adequate records to support a claim for reimbursement. *See also* Section 443.1 of the Public Welfare Code.

While there would appear to be no dispute here that snack bar services provided to patients are reimbursable, there is a dispute with respect to the cost of those services to visitors. Section 2102.3 of the Medicare Provider Reimbursement Manual (Health Insurance Manual (HIM) 15), a federal document containing interpretive pronouncements pertaining to Chapter 405 of 42 C.F.R., gives as an example of costs unrelated to patient care, and hence not reimbursable, meals sold to visitors. This manual is of course not binding on us but we view it as persuasive authority for determining what types of activities are unrelated to patient care. We note also that the issue of whether visitors' meals are reimbursable has been considered in an unpublished decision of the Deputy Administrator of the Health Care Financing Administration. In *Hollywood Presbyterian Medical Center v. Blue Cross Association /Blue Cross of Southern California,* 1981 Medicare and Medicaid Guide (CCH) §31,907 (1982) the provider operated a coffee shop which served both employees and visitors. Non-employee utilization of the coffee shop was determined by a two day survey to constitute forty-one percent of the usage. The ratio of employee to visitor meals developed by this survey was used to determine utilization. On the question of reimbursement the Deputy Administrator wrote:

> The provider is clearly entitled to reimbursement for those unrecovered costs associated with the coffee shop that relate to employees. The Deputy Administrator, however, disagrees with the [Provider Reimbursement Review Board's] allowance of the rest of the unrecovered coffee shop costs. To the extent these costs refer to meals of visitors, these costs are not reimbursable. Such costs are 'unnecessary in the efficient delivery of needed health services' of beneficiar-

ies. . . . Having a coffee shop available to visitors may well be a convenience and a pleasant 'extra'. Operating the coffee shop for use by visitors as well as employees may even be a sound management decision. However, although costs associated with usage by persons who render necessary health care are reimbursable by Medicare, costs associated with usage by others are not reimbursable by this program.

*Id.* at 9486-87. Of course this decision is not binding on us,[3] but we find its reasoning persuasive and thus believe that the Secretary acted properly in determining that snack bar use by visitors is not an allowable cost.

In *Hollywood Presbyterian,* however, costs *were* allowed for *employee* use. We believe that they would also be allowable here as fringe benefits pursuant to Section 2145 of the Medicare Provider Reimbursement Manual *if* the percentage of use by employees could be established. But the parties agree that this data is incapable of determination. This absence of documentation distinguishes the instant case from *Hollywood Presbyterian.* Simply put, Provider here has failed to meet its burden to establish by proper documentation the percentage of reimbursement to which it is entitled.[4] Provider, nonetheless, argues that because some costs (those attributable to patient and employee services) *are* clearly reimbursable, *some* recoupment should be permitted. Provider relies upon *Mountain Rest Nursing*

---

[3] Provider cites several decisions by the Provider Reimbursement Review Board and several Provider Appeal Decisions. All of these decisions contain *caveats* that they are not to be cited or relied upon as precedent. We thus do not view them as persuasive.

[4] The testimony in the record that conducting an inquiry of status of snack bar users would be destructive to the central purpose of the facility cannot be used by Provider to circumvent the federal law requiring documentation.

*Home, Inc. v. Department of Public Welfare,* 73 Pa. Commonwealth Ct. 42, 457 A.2d 600 (1983). In *Mountain Rest* a provider appealed from a disallowance of its claim of reimbursement for depreciation of its facility. Mountain Rest's depreciation records had been destroyed by fire through no fault of its own. DPW disallowed reimbursement. In reversing we noted that Mountain Rest was without fault in the loss of records and that some records *were available* for analysis. We thus concluded that DPW must *attempt* to make an estimated calculation of the costs basis and that the hearing examiner had acted improperly in presuming from the fact that a calculation based upon available data *could* preclude depreciation reimbursement that Mountain Rest was not entitled to a calculation at all. *Mountain Rest* is therefore distinguishable first, because records were kept but lost through no fault of the provider and second, because other data was available. We decline to extend the *Mountain Rest* rationale to the facts of this case.

Finally, regarding the second cost issue in contention we must consider whether disallowance of group activities as a reimbursement cost was proper. Although the hearing attorney's recommendations stated that the activities "contributed to productivity and inhibited turnover" the Director found the activities to be social in nature and unrelated to longevity of care or meritorious service. DPW policy precludes recognition of costs which are essentially social in nature. It is clear from our previous discussion that the Director is the finder of fact. She is, of course, also responsible for seeing that DPW policies are consistently applied. She thus acted within her province in denying reimbursement for the employee group activities and hence her determination, unaltered by the Secretary, must stand. Based upon the foregoing the order of the Secretary is affirmed.

ORDER

Now, July 24, 1986, the determination of the Secretary in the above-captioned matter is hereby affirmed.