535 A.2d 1243

Carbon County Home for the Aged, Cedarbrook, Cedarbrook-Fountain Hill Annex, Westmoreland Manor, Beaver Valley Geriatric Center, Fair Acres Geriatric Center, Pocopson Home and Philadelphia Nursing Home, Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued May 19, 1987, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Gerald Gornish,* with him, *Jeffrey B. Schwartz* and *Steven E. Bernstein,* Of Counsel: *Wolf, Block, Schorr and Solis-Cohen,* for petitioners.

*Jason W. Manne,* Assistant Counsel, with him, *Bruce G. Baron,* Assistant Counsel, and *John A. Kane,* Chief Counsel, for respondent.

OPINION BY JUDGE COLINS, January 20, 1988:

Eight county-operated nursing homes (collectively, petitioners)[1] appeal an order of the Department of Public Welfare (Department) reversing a decision of the Office of Hearings and Appeals which, in turn, adopted in its entirety a Hearing Examiner's decision that newly-revised reimbursements be paid to petitioners retroactive to July 1, 1980 rather than to October 1, 1980 as determined by the Department. The sole question for

---

[1] Carbon County Home for the Aged, Cedarbrook, Cedarbrook-Fountain Hill Annex, Westmoreland Manor, Beaver Valley Geriatric Center, Fair Acres Geriatric Center, Pocopson Home and Philadelphia Nursing Home.

our review is whether the Department properly delayed the retroactive payment by three months.

Petitioners, participants in the Pennsylvania Medical Assistance (MA) Program, are skilled nursing and intermediate care facilities (SNFs and ICFs, respectively). Prior to the reimbursement revision here at issue, petitioners were reimbursed by the Department on the basis of actual allowable costs subject to a ceiling on net operating costs calculated on the basis of the Statewide weighted average cost of providing long-term care in county nursing homes. However, Section 201 of the General Appropriation Act of 1980 modified such computation by providing that:

> For public nursing homes. . . . Effective January 1, 1981, in accordance with Federal regulations, the [Department] shall replace the current Statewide ceilings for county nursing homes. *New ceilings shall be calculated for each standard metropolitan statistical area and nonstandard metropolitan statistical area group within the State and shall be paid retroactively to July 1, 1980*. The new ceilings shall provide that no public nursing home shall have a ceiling below its rate that was in effect prior to implementation of the new ceilings. This and any other change in the method of county home reimbursement must be approved in advance by the Federal Department of Health and Human Services. (Emphasis added.)

On July 26, 1980, the Department advised all interested parties[2] that current statewide reimbursement ceilings for county-operated SNFs and ICFs were to be replaced, in accordance with the Act, with ceilings based on standard and nonstandard metropolitan statis-

---

[2] *See* 10 Pa. Bulletin 3122.

tical areas. The Department thereafter submitted to the Department of Health and Human Services (HHS) a proposed amendment to the State MA plan incorporating the newly-revised reimbursement methodology and was advised by HHS that federal regulations might require sixty days public notice of the proposed revision if the anticipated payment varied from previous payments by one percent or more. The pertinent regulation found at 42 C.F.R. §447.205 provides that:

Public notice of changes in Statewide method or level of reimbursement.

(a) *When notice is required.* [T]he agency must provide public notice of any proposed change in the Statewide method or level of reimbursement for a service, if the change is expected to increase or decrease the Medicaid payments for that service by 1 percent or more during the 12 months following the effective date of the change.

The commentary accompanying the regulation requires public notice of proposed changes that meet *all* of the following conditions:

(1) *The proposed change affects the general method of payment to all providers of a particular service.*

(2) The proposed change affects the level of payment for that particular service. . . .

(3) The proposed change is projected to affect a State's Medicaid expenditure for a particular service by 1% or more during the 12 months following the effective date of the change. (Emphasis added.)

On July 25, 1981, the Department implemented[3] the SMSA reimbursement methodology for county-op-

_____

[3] *See* 11 Pa. Bulletin 2610-21.

erated nursing facilities. Despite the Act's directive that such payments be made retroactive to July 1, 1980, the Department ordered payments be made retroactive only to October 1, 1980. According to the Department, the deviation was a consequence of compliance with the sixty day notice requirement of the federal regulation; as it first published notice of its intent to change the level of reimbursement on July 26, 1980, it necessarily directed an effective date of October 1, 1980.

Upon receipt of audit information indicating the retroactive reimbursement at the revised ceiling only to October 1, 1980, petitioners individually appealed to the Department and the appeals were consolidated for a hearing before a designated Hearing Examiner. The Hearing Examiner determined that the proposed change in reimbursement affected *only* county-operated nursing facilities, thus rendering 42 C.F.R. §447.205 inapplicable to the instant matter because the proposed change did not affect the general method of payment to *all* providers of a particular service. The Hearing Examiner concluded that the Department acted improperly in delaying the effective date of reimbursement at the newly-revised rate and held that payments should be paid retroactive to July 1, 1980, in accordance with the statutory mandate. The Office of Hearings and Appeals adopted the Hearing Examiner's decision in its entirety.

Upon administrative appeal, the Executive Deputy Secretary of the Department concluded that county nursing facilities comprised a separate class of provider rendering a distinct type of service. Having so found, the Secretary determined that the proposed change in reimbursement of county nursing homes affected "the general method of payment to all providers," thus calling into play the federal notice requirement of 42 C.F.R. §447.205. He finally determined that the tripartite test of that regulation had been met *in toto* and that

the Department properly deferred retroactive payment to petitioners until October 1, 1980. Petitioners' appeal to this Court followed.

Upon appeal, petitioners contend the Secretary erred in holding the federal notice provision here applicable. As they correctly argue, such provision requires public notice of a proposed change in reimbursement only if three criteria coalesce. Petitioners submit that two of the three requisite criteria are absent, that is, that the proposed change in reimbursement will not affect *all* providers of a particular service nor vary Medicaid expenditures by 1% or more during the year following the effective date of the change. The Department counters that its application of the regulation constituted a reasoned judgment taken to protect the public fisc; had it failed to abide by federal regulatory constraints, HHS might have withheld monies, or so the Department now contends.

Our threshhold determination, of course, is whether the proposed change in reimbursement ceilings affects the general method of payment to all providers of a particular service.[4] The Hearing Examiner here found such characterization precluded by the fact that the revised rates applied solely to county-owned facilities. The Secretary, however, relied upon the provisions of the MA Plan to reach a contrary conclusion, which provisions in the Secretary's terms "traditionally" considered county-operated and private facilities as "providing similar but distinct nursing care services."

---

[4] We find no support for the Department's contentions that petitioners are here precluded from relief by their failure to take preliminary action to enjoin the implementation of the regulation or to seek a declaration from HHS as to the propriety of same. As neither contention was raised in the Department's Petition for Reconsideration or at any prior juncture in the instant matter, we will not now consider these arguments.

We have examined the provisions proffered by the Secretary and find no such distinction between county-owned and private facilities with respect to characteristic *services* as that term is used in the contested regulation. Indeed, the definitional provision of 42 C.F.R. §430.1,[5] specifically applicable to the Medicaid program, defines "services" as those "types of medical assistance specified in Section 1905(a)(1) through (18) of the [Social Security] Act",[6] wherein ICF and SNF services are defined but, we emphasize, are *not* distinguished on the basis of governmental and non-governmental ownership. Nor do Sections 443.1(2) and (3) of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, P.L. 904, *as amended,* 62 P.S. §§443.1(2) and (3), support this distinction. As the Secretary noted, those provisions indeed do distinguish county and private facilities in terms of reimbursement computation (Sections 443.1(2) and (3), respectively, authorizing MA payments for the *cost* of skilled and intermediate nursing care in county homes but establishing rates on a *cost-related* basis in a non-public facility) but, again, do not distinguish the facilities in terms of categories of services rendered. Finally, we have reviewed the provisions of the state MA plan as relied upon by the Secretary and again find no support for his determination that county homes provide unique services.

During the course of preliminary communications regarding the implementation of the revision here at issue, HHS advised the Department that it questioned the reasonableness of classifying facilities on the basis of

---

[5] The regulations formerly contained in 42 C.F.R. §430.1 are now found in 42 C.F.R. §§400.200 and 400.203.

[6] Act of August 14, 1935, Ch. 531, Title XIX, added by the Act of July 30, 1965, §121(a), 79 Stat. 344 (current version at 42 U.S.C.A. §1396(d) (a)-(o) (West Supp. 1987)).

governmental or non-governmental ownership. As HHS then indicated, "the basic services provided by the county and non-county facilities are similar. . . ." HHS advised the Department that "[a]s a principle, criteria used to establish classes should be sufficiently general to apply to both government and non-government facilities. Provider eligibility to be included in a particular classification should not be precluded solely because of ownership." The Department attempted to justify its classification of facilities in terms of ownership by virtue of the fact that counties are obligated to care for dependent persons such that a greater proportion of Medicaid patients reside in county nursing facilities.[7] While we cannot fault the Department for its evident recognition of county budgetary concerns, we emphasize that there is no evidence on this record that such concerns have created a different category of nursing *service*. Having so concluded, we cannot find that the reimbursement revision affected the "general method of payment to all providers of a particular service" so as to satisfy the first criterion of 42 C.F.R. §447.205. We thus do not address the second and third criteria of that regulation.

The Department contends that our review of the regulation is restrained by the fact that it was promulgated pursuant to department legislative rule-making authority. *See* Sections 201 and 403 of the Code, 62 P.S. §§201, 403. As such, we may not invalidate the rule unless we find it so unreasonable as to be the expression of a whim instead of an exercise of judgment. *Mountain Rest Nursing Home, Inc. v. Department of Public Welfare*, 73 Pa. Commonwealth Ct. 42, 457 A.2d 600 (1983). We are well aware of this principle but cannot

---

[7] We do note that by letter dated March 17, 1981, HHS granted approval to the MA plan amendment, effective July 1, 1980.

permit the Department's rule to be premised on an erroneous assumption. The Department here determined the retroactive reimbursement date of October 1, 1980 by erroneously equating differences in criteria of ownership with differences in the provision of nursing services. Such error may not stand. Petitioners are entitled to reimbursement at rates incorporating the revised ceiling retroactive to July 1, 1980.

Accordingly, the Order of the Department is reversed.

ORDER

AND NOW, this 20th day of January, 1988, the Order of the Department of Public Welfare in the above-captioned matter is reversed.