Marjory Marsh, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Submitted on briefs, to Judges WILKINSON, JR., DISALLE and MACPHAIL, sitting as a panel of three.

*David L. Hill,* for petitioner.

*Betty F. Perry,* for respondent.

OPINION BY JUDGE MACPHAIL December 28, 1979:

Marjory Marsh (Petitioner] appeals to this Court from a decision of the Department of Public Welfare [DPW) which dismissed her appeal from an order of the Philadelphia County Board of Assistance (Board) denying her payment for a dilantin blood level test. The sole issue raised on appeal is whether DPW abused its discretion in excluding coverage of the dilantin level test under the Medical Assistance program. We hold that it did.

The facts of this case are not in dispute. Petitioner receives Social Security and Supplemental Security Income payments. On July 21, 1977, brain surgery was performed on her to relieve an intracerebral hematoma. There is uncontradicted evidence on the record in the form of a letter from Petitioner's doctor that "due to [the] previous brain surgery, [Petitioner] *must* take Dilantin to control seizures. In order to be certain that her dosage is correct she *must* have serum Dilantin levels done every so often." (Emphasis added.) On July 26, 1978, Petitioner had such a test performed as an outpatient at Episcopal Hospital. She was billed $25.00 for the test. Petitioner submitted the bill to the Board for payment, but payment was denied on the basis that Section 9416, Appendix I of the Medical Assistance Manual (MA Manual) does not provide for such coverage. Her appeal to DPW from the Board's decision was denied and this matter is now before us for consideration.

Title XIX of the Social Security Act, 42 U.S.C. §1396 *et seq.*, commonly referred to as Medicaid, is a federally funded program designed to provide medical assistance to needy persons in participating states.[1]

---

[1] For excellent discussions of the scope and purpose of Title XIX, *see Beal v. Doe*, 432 U.S. 438 (1977) ; *Roe v. Casey*, 464 F. Supp. 487 (E.D. Pa. 1978) ; *Doe v. Colautti*, 454 F. Supp. 621 (E.D. Pa. 1978), *aff'd*, 592 F.2d 704 (3d Cir. 1979).

The Medicaid program in Pennsylvania is administered by DPW pursuant to the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended,* 62 P.S. §441.1 *et seq.* Participating states must administer their programs in conformity with certain federal statutory and regulatory guidelines. For example, participating states are required to provide qualified individuals with five types of medical service. *See* 42 U.S.C. §§1396a(13)(B) and 1396d(a). One of the required services, and the one at issue here, is "other laboratory and X-ray services." 42 U.S.C. §1396d(a)VII(3).[2] States are not required to fund every medical procedure falling within the five categories. They have broad discretion in setting standards for determining the extent of medical assistance to be provided. The standards, however, must be reasonable and must be consistent with the objectives of Title XIX. *Beal v. Doe,* 432 U.S. 438, 441, 444 (1977); 42 U.S.C. §1396a(a)(17).

Section 9416.41 of the MA Manual provides that medical assistance payments for laboratory services ordered by private independent physicians are limited to the procedures listed in Appendix I to Section 9416. A dilantin level test is not listed in the Appendix and, therefore, is not compensable by DPW. Interestingly, Section 9413 of the MA Manual *makes dilantin, itself, compensable.* The question we must decide, then, is whether DPW's refusal to include a dilantin level test as a compensable laboratory procedure is reasonable and consistent with the objectives of Title XIX or whether DPW abused its discretion in promulgating and enforcing such a restriction.

---

[2] The other required services are inpatient hospital services, outpatient hospital services, skilled nursing facility services, and physicians' services. The participating states *may* provide an additional assortment of services as outlined in 42 U.S.C. §1396d(a).

We find the opinion in *Roe v. Casey,* 464 F. Supp. 487 (E.D. Pa. 1978) to be instructive on this issue and we adopt the reasoning of the District Court here. In interpreting the statutory requirements of 42 U.S.C. §§1396[3] and 1396a(a)(17)[4] and the regulatory requirements of 42 C.F.R. §449.10(a)(5)(i),[5] the District Court said,

---

[3] For the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary of Health, Education, and Welfare, State plans for medical assistance.

[4] (a) A State plan for medical assistance must—

. . . .

(17) include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter. (B) provide for taking into account only such income and resources as are . . . available to the applicant or recipient . . . , (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan. . . .

[5] This regulation is now found at 42 C.F.R. §440.230 and reads:

(a) The plan must specify the amount and duration of each service that it provides.

(b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.

(c)(1) The medicaid agency may not deny or reduce the amount, duration, or scope of a required service under §§440.210 [concerning required services for the categorically needy] and 440.220 [concerning required services for the

The stated objective of Title XIX is to provide medical assistance for those persons unable to afford necessary medical services. 42 U.S.C. §1396. While it is true that Title XIX nowhere explicitly states that 'all necessary medical services' must be provided to eligible participants of a participating state's program, the plain meaning of its objective of providing assistance to those unable to afford 'necessary' medical services must be construed as meaning that the medical assistance provided by the program must be sufficient to provide the 'necessary' medical services which the eligible are otherwise unable to afford.
. . . .
. . . The objective of the Act, as found above, is to provide necessary medical services for all those unable to afford them. While a state need not provide funding for all medical treatment falling within the five mandatory categories of services and may adopt reasonable standards to determine the extent of medical services that it will provide, *it may not employ that discretion to eliminate entirely from reimbursement those medical services certified by a qualified physician as being medically necessary.* . . . [W]e construe [the language of 42 U.S.C. §1396(a)(17)] as pertaining primarily to permitting the states to adopt discretionary, but liberal, standards for determining the standards for, and

---

medically needy] to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.

(2) The agency may place appropriate limits on a service based on medical necessity or on utilization control procedures.

Although slightly different in wording, the regulation is basically the same as that interpreted by the Court in *Roe v. Casey*.

degree of, financial eligibility under Medicaid, as well as the standards for determining the scope of non-medically necessary services that it will provide to eligible participants. . . . *We find that the clear meaning of [42 C.F.R. §449.10(a)(5)(i)] implementing Title XIX require[s] the states to provide at least the minimum necessary medical services required for the successful treatment of the particular medical condition presented. We find, further, that these implementing regulations, while permitting states to exclude or limit some unnecessary medical services if in its discretion it chooses to do so, flatly prohibit a state from excluding entirely or limiting below the minimum treatment required any category or type of necessary medical services except for reasons either not relating to, or in addition to, the diagnosis, type of illness or condition. . . .* In other words, we construe [42 C.F.R. §449.10(a)(5)(i)] as permitting a state to apply limits upon the medical procedures it supplies, such as non-medical necessity, see, e.g., Beal v. Doe, supra, but not as limiting the other requirements and objectives of Title XIX that all medically necessary services be reimbursed. (Emphasis added.)

464 F. Supp. at 500-01.

As we have noted, there is uncontradicted evidence on the record that Petitioner *must* take dilantin to control her seizures and that serum dilantin level tests *must* be performed periodically to insure that she is receiving the proper dosage.[6] This is clearly the type of "medical services certified by a qualified physician

---

[6] DPW did not object to the competency of the doctor's letter as hearsay evidence nor has it raised that issue in this appeal. To the contrary, DPW does not dispute the content of the letter, but rather the interpretation of the content in light of the DPW regulations.

as being medically necessary'' that the Court described in *Roe v. Casey*. Petitioner's dilantin dosage is determined by the results of the serum dilantin level test. The record leaves no doubt, then, that the test is a part of the minimum necessary medical treatment mandated by Petitioner's condition. For DPW to compensate her or her medical service supplier for the dilantin itself but not for the dosage level test is unreasonable and inconsistent with the scope and purpose of Title XIX.

The Department of Public Welfare abused its discretion in prohibiting compensation for the serum dilantin level test. Accordingly, we reverse DPW's decision and order the Department to compensate the appropriate party, either Petitioner or the medical service supplier, for the required test.

ORDER

AND Now, this 28th day of December, 1979, the Order of the Department of Public Welfare dated March 2, 1978 is reversed and the Department is ordered to compensate the appropriate party, either Petitioner or her medical service supplier, for the required serum dilantin level test.