Karen Wengrzyn, Petitioner *v.* Walter Cohen, Secretary, Pennsylvania Department of Public Welfare, Respondent.

Argued May 7, 1985, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Samuel W. Milkes*, for petitioner.

*Jean E. Graybill*, Assistant Counsel, for respondent.

OPINION BY JUDGE PALLADINO, October 4, 1985:

Karen Wengrzyn (Petitioner) appeals from an order of the Department of Public Welfare (DPW) denying a Medical Assistance Program Exception which requested payment for items prescribed for Petitioner's son, Eric Wengrzyn. We affirm.

Petitioner's son, Eric, is eligible for Medical Assistance benefits under the Aid to Families with De-

pendent Children (AFDC) category. Eric's physician, Dr. Donald Lookingbill, diagnosed Eric as having a condition known as severe atopic dermatitis. In order to keep the condition under control and prevent infection, Eric is required to take frequent baths with Alpha Keri bath oil, and to apply Eucerin Cream to his skin several times each day. The Alpha Keri and Eucerin Cream were prescribed by Dr. Lookingbill.

Alpha Keri and Eucerin Cream are not prescription drugs and can be purchased over the counter. DPW's regulations list emollients, personal care items, and medicine chest items as non-compensable under the Medical Assistance program. 55 Pa. Code §1121.54(10). On February 3, 1984, Petitioner applied for a Program Exception under 55 Pa. Code §1101.32(c)[1] for the Alpha Keri and the Eucerin

---

[1] The text of 55 Pa. Code §1101.32(c) reads as follows:

(c)  Program exceptions.  Exceptions shall be as follows:

(1)  The Department will, under extraordinary circumstances, pay for an exceptional type of medical service or item that is more elaborate than one for which the Medical Assistance program has an established fee. *If a practitioner feels that lack of such a service or item would jeopardize the recipient's health he may either give the recipient the prescription or order to take to the CAO, or send the prescription or order to the CAO by mail.* If the recipient would otherwise be eligible for the service or item, the CAO will forward a form PA 235 (Request for Approval) to the practitioner to be completed and returned. This form must be completed in detail in order for the request to be considered.

(2)  The CAO will forward the prescription or order along with the pertinent information and recommendations to the Office of Medical Assistance where it will be reviewed by the Department's medical consultants. The Office of Medical Assistance will notify the CAO in writing of its decision. If the request is approved, the Office of Medical Assistance will forward a form PA 48 (Authorization for Services and Supplies) to the CAO to be given to the recipient. If the request is denied, the Office of Medical

Cream. On February 14, 1984, this request was denied by the Program Exception Unit of the DPW Office of Medical Assistance. The DPW Hearing Officer affirmed the denial.

DPW has established the following criteria in evaluating all requests for program exceptions.[2]

1. The Recipient is eligible, and not in an institution.

2. Lack of the requested service or item will result in serious harm to the individual.

3. The case must be truly exceptional; the exception process cannot be used as a back door to program expansion, for example, paying for speech therapy, occupational therapy, etc.

4. The item may be reasonably expected to improve the patient's condition.

5. No alternative is available in the fee schedule. This does not mean that the covered alternative must be as up-to-date or efficient or 'state-of-the-art' as the requested item.

6. The item or service is not experimental.

DPW's Exhibit No. D-1. In denying Petitioner's request for a program exception, DPW stated that the Petitioner's request did not fit into the established criteria.[3]

---

Assistance will notify the CAO, which will in turn, notify the recipient in writing giving the reason for the denial. The regulation requiring a decision on requests for prior authorization within 21 days does not apply to requests for exceptions. (Emphasis added.)

[2] The list of general criteria are internal guidelines that have been established by DPW, and have not been published as regulations. The list was introduced as evidence at Petitioner's hearing.

[3] Petitioner argues that the criteria established by DPW to determine whether a Program Exception should be granted are

When examining the decision of DPW in this case, we note that an administrative agency has wide discretion when establishing rules, regulations and standards, and also in the performance of its administrative duties and functions. *Wolf v. Department of Public Welfare,* 69 Pa. Commonwealth Ct. 398, 452 A.2d 574 (1982). Therefore, this Court cannot overturn an agency's exercise of its discretion absent proof of fraud, bad faith or a blatant abuse of discretion. *Id.*

The Commonwealth of Pennsylvania participates in the Medical Assistance Program established by Title XIX of the Social Security Act, 42 U.S.C. §§1396a-1396i. DPW administers this program pursuant to Sections 441.1-451 of the Public Welfare Code.[4] States participating in the federally funded program are required to administer their programs in compliance with certain federal guidelines. *Shappell v. Department of Public Welfare,* 66 Pa. Commonwealth Ct. 641, 445 A.2d 1334 (1982). The participating states "have broad discretion in setting standards for determining the extent of medical assistance to be provided. The standards, however, must be reasonable and must be consistent with the objectives of Title XIX." *Marsh v. Department of Public Welfare,* 48 Pa. Commonwealth Ct. 216, 218, 409 A.2d 926, 927 (1979). Thus, DPW's denial of the exception should not preclude the proper administration of the Medical Assistance Program as required by Title XIX.

---

stricter than is warranted by the actual text of 55 Pa. Code §1101.32(c) and therefore contradict the regulatory language. However, because the Petitioner did not raise this issue below, we cannot address it on appeal.

[4] Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended,* 62 P.S. §441.1-451.

In determining the responsibilities of the participating states as required by Title XIX, this Court, in both *Marsh* and *Shappell,* adopted the reasoning articulated in *Roe v. Casey,* 464 F. Supp. 487 (E.D. Pa. 1978), *aff'd,* 623 F.2d 829 (3rd Cir. 1980). We continue to find this rationale instructive. The *Roe* court set forth the objective of Title XIX as follows:

> The stated objective of Title XIX is to provide medical assistance for those persons unable to afford necessary medical services. 42 U.S.C. §1396. While it is true that Title XIX nowhere explicitly states that 'all necessary medical services' must be provided to eligible participants of a participating state's program, the plain meaning of its objective of providing assistance to those unable to afford 'necessary' medical services must be construed as meaning that the medical assistance provided by the program must be sufficient to provide the 'necessary' medical services which the eligible are otherwise unable to afford.

464 F. Supp. at 500.

The *Roe* court later discussed 42 C.F.R. §449.10 (a)(5)(i), the regulation implementing Title XIX.

> We find that the clear meaning of this portion of the regulations implementing Title XIX require the states to provide at least the minimum necessary medical services required for the successful treatment of the particular medical condition presented. We find, further, that these implementing regulations, while permitting states to exclude or limit some unnecessary medical services if in its discretion it chooses to do so, flatly prohibit a state from excluding entirely or limiting below the minimum treatment required any category or type of necessary

medical services except for reasons either not relating to, or in addition to, the diagnosis, type of illness or condition.

464 F. Supp. at 501.

Here, Petitioner presented as evidence a letter from Dr. Lookingbill stating that the Alpha Keri and Eucerin Cream are medically necessary for the treatment of Eric's condition. The hearing officer stated that there was no doubt that Eric's condition required treatment, and that the Alpha Keri and Eucerin Cream help to control Eric's condition. Relying on *Roe*, Petitioner thus argues that because Eric's condition requires treatment and the Alpha Keri and Eucerin Cream are medically necessary for this treatment, the two items should therefore fall under the coverage of the Medical Assistance Program as an exception. We disagree.

The DPW found that the Alpha Keri and Eucerin Cream fall outside of the established criteria in that the lack of the items will not result in serious harm to Eric; that they contain no active medication and are therefore pharmaceutically inert; and that the items are not exceptional. Most dispositive of the issue before us, however, is the testimony of Dr. O. K. Stevensen, the DPW witness, that alternatives are provided in the fee schedule for medication that will treat Eric's condition.

Although Petitioner testified that no other prescription or over-the-counter item had helped Eric's condition, she presented no evidence to indicate that the alternatives available on the Medical Assistance Program fee schedule would not help to relieve Eric's dermatitis.[5] By offering alternatives under the Pro-

---

[5] The party seeking public assistance benefits has the burden of proving eligibility. *Juras v. Department of Public Welfare*, 73 Pa. Commonwealth Ct. 169, 457 A.2d 1020 (1983).

gram, DPW is thus providing the "minimum necessary medical treatment" required for the treatment of Eric's condition. *Roe,* 464 F. Supp. at 501. DPW is not providing the exact treatment requested by Petitioner and her son's physician. However, absent evidence to the contrary, because alternatives are available under the Program, DPW is not "excluding entirely or limiting below the minimum treatment required" the medical services necessary to treat the Petitioner's son. *Id.* In addition, DPW's limiting of the type of medical treatment available, while not excluding such treatment, is not fraudulent and does not constitute an abuse of discretion on the part of DPW. Thus, DPW's denial of the Program Exception to the Petitioner is within the discretionary power of the agency, and does not offend the purpose of Title XIX.

Accordingly, we affirm the decision of DPW denying the Program Exception requested by Petitioner.

## ORDER

AND Now, October 4, 1985, the decision of the Department of Public Welfare in the above-captioned matter, dated June 21, 1984, is affirmed.

---

DISSENTING OPINION BY JUDGE KALISH:

I dissent, respectfully.

There was testimony from the petitioner's doctor that the prescribed cream and lotion were medically necessary to avoid infection. The petitioner testified that she tried numerous other alternatives, none of which worked to relieve her son's condition; that her son was hospitalized three times because of this condition and suffered infection "for not having right medication"; and that when untreated, her son's skin was more susceptible to infection.

The doctor for the Department of Public Welfare (DPW) testified that the petitioner did not meet the necessary criteria that he had devised for an exception; that the lack of these items would not result in serious harm; that these moisturizers are not exceptional; that dermatitis cannot be expected to be improved by the use of this lotion; and that alternatives were available.

"While a state need not provide funding for all medical treatment . . . and may adopt reasonable standards to determine the extent of medical services it will provide, it may not employ that discretion to eliminate entirely from reimbursement those medical services certified by a qualified physician as being medically necessary." *Marsh v. Department of Public Welfare,* 48 Pa. Commonwealth Ct. 216, 220, 409 A.2d 926, 928 (1979), *quoting Roe v. Casey,* 464 F. Supp. 487, 500 (E.D. Pa. 1978).

Without making any specific findings, the hearing examiner simply found that since a fee bill has been established for possible alternatives, the appeal must be denied. This was done in the face of a certification by a qualified physician that the items were medically necessary.

Since the administration by an agency of its program involves a great deal of discretion, this court will not disturb its exercise in the absence of a manifest abuse or a purely arbitrary execution of duty. *Nolf v. Department of Public Welfare,* 69 Pa. Commonwealth Ct. 398, 452 A.2d 574 (1982). The examiner acted arbitrarily and abused its discretion.