525 A.2d 24

Metro Transportation Company t/a Yellow Cab Co., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Submitted on briefs December 12, 1986, to Judges COLINS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Kathleen Herzog Larkin,* with her, *Victor A. Young* and *Zenola Harper, Blank, Rome, Comisky & McCauley,* for petitioner.

*Karen Oill Moury,* Assistant Counsel, with her, *Alfred N. Lowenstein,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

OPINION BY JUDGE COLINS, May 4, 1987:

Metro Transportation Company, t/a Yellow Cab Company (Metro), appeals an order of the Pennsylvania Public Utility Commission (Commission) which imposed a $500 fine upon Metro for refusing taxicab service to a Bernard Seitlin, a visually handicapped individual, because he was accompanied by his guide dog. The pertinent regulation governing such service provides that:

> Common carriers shall transport dogs trained for the purpose of guiding blind or deaf persons when accompanying such persons paying regular fare. The guide dogs shall be properly leashed and muzzled and shall not occupy a seat in the conveyance.

52 Pa. Code §29.102.

In a complaint filed with the Commission, Mr. Seitlin averred the following events: a Metro cab responded to his call for service and pulled to the curb where Mr. Seitlin waited with his guide dog and a sighted friend. According to Mr. Seitlin, the driver then screamed "no mutts" and pulled away from the curb, even while his companion had opened the door of the vehicle and started to enter.

Metro did not answer the complaint and the matter proceeded to a hearing before an Administrative Law Judge (ALJ). At the hearing, Metro did not proffer testimony, did not deny Mr. Seitlin's allegations, cross-examine him or assert any defense. The ALJ issued a decision sustaining the complaint and deemed all allegations therein to be admitted by Metro by virtue of its failure to file a responsive pleading. The ALJ then directed that Metro be issued a letter of warning and ordered to cease and desist from further violations of the Public Utility Code, 66 Pa. C. S. §§101-3315. The Commission requested review of the ALJ's decision and, noting that "any turndown for service of a handicapped person is of itself a cruel, gratuitous indignity," subsequently sustained Metro's violation. In lieu of the letter of warning ordered by the ALJ, the Commission assessed a $500 fine against Metro and stated that "a violation of such nature [could] not be allowed to occur without adequate penalty." Metro's motion for reconsideration was denied by the Commission and its appeal of the Commission's order assessing the fine followed.

Upon appeal, Metro contends that: (1) the Commission's decision was not supported by substantial evidence because the record does not indicate that Mr. Seitlin's guide dog was "properly leashed and muzzled," in accordance with the language of the relevant regulation; (2) the Commission abused its discretion in imposing a fine in the amount of $500 and erred in utilizing

its so-called "Penalty Guidelines" in so doing; and (3) the Commission's review of the ALJ's determination was untimely. We consider these issues seriatim.

Metro does not deny that Mr. Seitlin was refused taxi service because he was accompanied by his guide dog. Nevertheless, it contends that Mr. Seitlin did not establish a prima facie violation because he did not demonstrate that his guide dog was "properly leashed and muzzled," in accordance with 52 Pa. Code §29.102.

In our consideration of this argument, we find most significant the fact that Metro raises this matter for the first time in its Petition for Review filed with this Court. Indeed, we note the following series of events, notably characterized by inaction on Metro's part: Metro did not answer Mr. Seitlin's complaint, although it was clearly advised by the Commission, in a letter accompanying service of this document, that the Commission was empowered by Section 35 of the General Rules of Administrative Practice and Procedure, 1 Pa. Code §35.35, to deem all allegations of the complaint to be admitted, in the absence of Metro's filing a responsive pleading within the prescribed time period. Metro did not proffer evidence at the hearing before the ALJ, cross-examine Mr. Seitlin, or attempt to assert the allegedly improper muzzling of Mr. Seitlin's dog as a basis of the refusal of service. Nor did Metro file exceptions to the ALJ's decision. We reiterate that Metro's allegation of improper muzzling appears for the first time in its Petition for Review.

Under these circumstances, we are compelled by the mandate of Section 703(a) of the Administrative Agency Law, 2 Pa. C. S. §703(a), to conclude that Metro has waived consideration of this issue by virtue of its failure to raise the matter before either the ALJ or the Commission. *See T.W. Phillips Gas & Oil Co. v. Pennsylvania Public Utility Commission*, 81 Pa. Common-

wealth Ct. 205, 474 A.2d 355 (1984); *see also Wing v. Unemployment Compensation Board of Review,* 496 Pa. 113, 436 A.2d 179 (1981); Section 35.213 of the General Rules of Administrative Practice and Procedure, 1 Pa. Code §35.213;[1] Pa. R.A.P. No. 302(a).

Metro next argues that the Commission erred in assessing a $500 fine in the instant case, an amount specified in its "Penalty Guidelines"[2] for a second violation of its regulations by a single common carrier. Metro submits that the Commission's utilization of these guidelines was unlawful because they were not promulgated as regulations and that the Commission abused its discretion in assessing a fine in an amount concommitant with that of a second offense. The Commission counters that the guidelines are merely advisory, and more closely aligned to a "Statement of Policy," thus not subject to the statutory provisions governing regulations.

Our Supreme Court has considered the distinction between agency pronouncements constituting regulations which, to be valid, must conform with the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§1101-1208, and "statements of policy" not subject to those provisions. *Lopata v. Unemployment Compensation Board of Review,* 507 Pa.

---

[1] Section 35.213 of the General Rules of Administrative Practice and Procedure, 1 Pa. Code §35.213, provides in part that:
Objections to any part of a proposed report which is not the subject of exceptions may not thereafter be raised before the agency head in oral argument, or in an application for agency rehearing or reconsideration, and shall be deemed to have been waived. . . .

[2] The Commission's guidelines provide as follows: "If a taxicab driver refuses to render service, the fine schedule is as follows: $250 [First Offense], $500 [Second Offense], $1,000 [Third Offense]."

570, 493 A.2d 657 (1985). Citing its decision in *Pennsylvania Human Relations Commission v. Norristown Area School District*, 473 Pa. 334, 374 A.2d 671 (1977), the Supreme Court stated that documents establishing only general guidelines for further consideration, rather than promulgating binding rules of law, constituted statements of policy rather than regulations.

Unlike the subject documents in *Lopata*, which articulated a standard completely and unequivocally determinative of the relevant issue, the "Penalty Guidelines" utilized by the Commission in the instant matter in no way constitute pronouncements amounting to a binding rule of law. On the contrary, the guidelines offer no more than a generalized penalty schedule which affords the Commission a measure of flexibility in assessing civil penalties against violators, in accordance with the authority granted the Commission by virtue of 66 Pa. C. S. §3301. Moreover, Metro's argument that a second offense violation could only be imposed by the Commission if the first offense had also involved the refusal of taxi service to a visually-handicapped person and guide dog[3] is specious. We find no abuse of discretion on the part of the Commission[4] in assessing the instant penalty.

Finally, Metro contends that the Commission failed to request review of the ALJ's decision in a timely fashion so that the ALJ's decision became the final determination. Section 332(h) of the Public Utility Code, 66 Pa. C. S. §332(h), provides that:

---

[3] The record in the instant matter includes documentation of a prior violation by Metro involving an improper refusal of service, albeit one not involving a handicapped person.

[4] Discretionary acts of an agency can only be reversed where it has acted in bad faith, fraudulently or capriciously or committed a manifest abuse of its power. *Wengrzyn v. Cohen*, 92 Pa. Commonwealth Ct. 154, 498 A.2d 61 (1985).

> Any party to a proceeding . . . may file exceptions to the decision of the [ALJ] within 15 days after such decision is issued. . . . Any party to the proceeding may appeal to the Commission from the ruling of the [ALJ] on the exceptions within 15 days after such ruling is issued. If no exceptions are filed or if no appeal is taken from the ruling on the exceptions within 15 days after any such decision or ruling *is issued,* the decision or ruling shall become final . . . unless two or more Commissioners *within fifteen days after the decision or ruling* on the exceptions request that the Commission review the decision. . . . (Emphasis added.)

The ALJ's decision was dated March 13, 1985, and was sent to the parties under cover letter dated March 26, 1985. The Commission requested review on April 9, 1985.

Metro contends that the Commission's statutory fifteen day period within which review must be requested commenced on the date of the ALJ's decision, rather than the day the decision was sent to the parties. However, this contention is not supported by the pertinent regulation. Section 31.13(a) of the General Rules of Administrative Practice and Procedure, 1 Pa. Code §31.13(a), provides that: "In computing any period of time involving the date of the issuance of an order by an agency, the day of issuance of an order shall be the day the office of the agency *mails or delivers* copies of the order to the parties; . . . ." *See also* Pa. R.A.P. No. 108. Section 332(h) clearly refers to the issuance and, hence, the mailing date of the ALJ's decision. We conclude that the Commission timely requested review of the ALJ's decision.

Accordingly, the order of the Commission is affirmed.

ORDER

AND NOW, May 4, 1987, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.