Danielle **KEENHOLD** by Teresa **THROWER–KEENHOLD, Parent and Natural Guardian, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 12, 1999.

Decided Jan. 13, 2000.

**378**

James V. Fareri, Stroudsburg, for petitioner.

Daniel Fellin, Harrisburg, for respondent.

Before McGINLEY, J., KELLEY, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Danielle Keenhold (Danielle), through her mother Teresa Thrower–Keenhold, appeals from an order of the Bureau of Hearings and Appeals (Bureau) that affirmed the decision of the Department of Public Welfare (Department) approving home health aide services for six hours a day, seven days a week, rather than eight hours a day, seven days a week as requested by Danielle. We reverse the Bureau's decision to the extent that it affirmed the Department's denial of Danielle's request for the home health aide services for additional two hours a day, seven days a week.

The facts found by the hearing officer and adopted by the Bureau are undisputed. Danielle is an eleven-year old child, who suffers from severe spinal muscular atrophy, also known as Werdnig–Hoffmann disease, which progressively destroys muscles. Due to her conditions, Danielle has a very limited use of her upper extremities. She is wheelchair bound and totally dependent on others in all of her daily activities, including eating, dressing, bathing, toileting and preparing for school in the morning. In addition, she must be rolled over and repositioned in bed several times throughout the night.

Danielle resides with her mother, who is her sole caregiver at home. Danielle's mother is unemployed and has various medical problems, including chronic abdominal pain, chronic gynecological bleeding and chronic kidney problems. Since May 1997, the Department has provided home health aide services for Danielle for six hours a day from 12:00 a.m. to 6:00 a.m., seven days a week. When Danielle wakes up at 6:45 a.m., Danielle's mother must assume her care to get her ready for school, such as transferring her from the bed to the wheelchair, and bathing, dressing and feeding her. When Danielle arrives at school at 9:00 a.m., her school provides nursing services until 3:00 p.m. After school, her mother resumes her care until the home health aide provided by the Department arrives at 12:00 a.m.

Since the Department began providing the home health aide, Danielle's conditions have been steadily worsened. Her mother's medical conditions have also been aggravated due to the physical rigors of caring for Danielle. In December 1998, the Department provided Danielle the home health aide services for additional two hours from 6:00 a.m. to 8:00 a.m. due to her mother's medical complications. In early February 1999, Danielle's mother submitted, on behalf of Danielle, (1) the Outpatient Service Authorization Request Form (request form) signed by Danielle's mother on December 20, 1998, in which Danielle's home health aide, Ellie Fenner, R.N., requested continued home health aide services for eight hours a day from 12:00 a.m. to 8:00 a.m., seven days a week, for six months; (2) a letter from Peter Casale, M.D., dated October 28, 1998, describing the medical conditions of Danielle's mother; and (3) a letter dated October 15 1998 from Danielle's pediatric neurologist, Peter Bingham, M.D., and her nurse specialist in neurology.

Dr. Bingham and the nurse specialist stated in their October 15, 1998 letter:

Little Ms. Keenhold is well known to the Division of Neurology here at the Children's Hospital of Philadelphia. She carries the diagnosis of Spinal Muscular Atrophy.

Spinal Muscular Atrophy (SMA) is a slowly progressive neuro-muscular disease that destroys muscles leaving an individual extremely weak. Danielle is wheelchair bound, as she is unable to

walk, stand, sit independently, reposition herself, or take care of her everyday needs such as dressing, toileting, and eating independently. Danielle must depend upon another individual for all of her needs.

Despite her strong dependency upon others, Danielle is just fun to be with. She is bright, has a good sense of humor and likes keeping up with her peers. We are requesting 13 hours of nursing help a day as Danielle does require 24 hours of care a day. She needs total assistance for personal care, hygiene, range of motion exercise, chest percussion and postural drainage. Even during the night, Danielle requires assistance when she needs repositioning or other help such as going to the bathroom or getting a drink of water.

Her mother['s] health problems therefore would benefit from having help in the home to care for her daughter. A home health aid is needed to assist Danielle each day of the week.

Danielle is prone to pneumonia and infections; therefore, to maintain her current health, proper care on the day to day basis is medically necessary to help prevent potential hospitalizations.

We are grateful for the care that you provide Danielle and hope that you will be able to provide the 13 hours nursing care 7 days a week.

On January 22, 1999, Dr. Bingham certified in the request form that the requested home health aide services for eight hours a day and seven days a week were medically necessary for Danielle.

■ On February 12, 1999, the Department's Office of Medical Assistance Program approved the home health aide services for six hours a day, seven days a week, but disapproved the services for additional two hours a day, seven days a

week. Danielle, through her mother, appealed the Department's decision to the Bureau. After a hearing held over telephone on April 15, 1999, at which the Department's witness, Carol Borwegan, R.N, and Danielle's mother testified, the hearing officer denied Danielle's appeal, concluding that Danielle failed to establish her needs for daily home health aide services from 6:00 a.m. to 8:00 a.m. The Bureau subsequently adopted the hearing officer's adjudication and affirmed the Department's decision. Danielle's appeal to this Court followed.[1]

■ Danielle contends that the Bureau erred in affirming the Department's denial of her request for home health aide services for additional two hours a day, seven days a week because the undisputed facts found by the hearing officer establish her needs for the requested additional services.

■ While states participating in the federally funded medical assistance program are not required to fund every medical procedure for the needy, the states must provide *at least the minimum necessary medical services* required for the successful treatment of the particular medical condition presented. *Marsh v. Department of Public Welfare*, 48 Pa.Cmwlth. 216, 409 A.2d 926 (1979). The states are accordingly prohibited "from excluding entirely or limiting below the minimum treatment required any category or type of necessary medical services except for reasons either not relating to, or in addition to, the diagnosis, type of illness or condition." *Shappell v. Department of Public Welfare*, 66 Pa.Cmwlth. 641, 445 A.2d 1334, 1336 (1982) (quoting *Roe v. Casey*, 464 F.Supp. 487, 501 (E.D.Pa.1978), *aff'd*, 623 F.2d 829 (3rd Cir.1980)).

---

1. This Court's scope of review of the Bureau's adjudication is limited to determining whether the adjudication is in accordance with the law, does not violate constitutional rights, and is supported by substantial evidence in the record. *Children's Hospital of Philadelphia v. Department of Public Welfare*, 153 Pa.Cmwlth. 634, 621 A.2d 1230 (1993), *appeal denied*, 535 Pa. 662, 634 A.2d 225 (1993).

The Department's regulations at 55 Pa. Code § 1101.66(a) set forth the following standards for medical assistance:

(a) The Department pays for compensable services or items rendered, prescribed or ordered by a practitioner or provider if the service or item is:

(1) Within the practitioner's scope of practice.

(2) Medically necessary.

(3) Not in an amount that exceeds the recipient's needs.

(4) Not ordered or prescribed solely for the recipient's convenience.

(5) Ordered with the recipient's knowledge.

A service, item, procedure or level of care is "medically necessary," if it is:

(i) Compensable under the Medical Assistance program.

(ii) Necessary to the proper treatment or management of an illness, injury or disability.

(iii) Prescribed, provided or ordered by an appropriate licensed practitioner in accordance with accepted standards of practice.

55 Pa.Code § 1101.21.

In his adjudication, the hearing officer did not question the medical necessity for the care required for Danielle from 6:00 a.m. to 8:00 a.m. daily. The hearing officer found that Danielle wakes up at 6:45 a.m. after the home health aide currently provided by the Department has already left at 6:00 a.m., and that due to her medical conditions of severe muscular atrophy, Danielle is totally dependent on others and requires the caregiver's help "for dressing, bathing, and preparing for school or other activities of the day." Hearing Officer's Adjudication, Findings of Fact No. 6.[2] Further, Dr. Bingham stated in his letter that Danielle requires nursing

help for thirteen hours a day and seven days a week. On January 22, 1999, he certified in the request form that the requested home health aide services for eight hours a day, seven days a week were medically necessary. Danielle's home health aide also stated in the request form that the additional two hours were required to move Danielle from the bed to the wheelchair and assist her with her daily needs in the morning.

To justify his decision to deny Danielle's appeal, the hearing officer stated, however, that the home health aide services for additional two hours from 6:00 a.m. to 8:00 a.m. exceed Danielle's needs because Danielle's mother failed to adequately document her medical conditions preventing her from caring for Danielle during that time. In support, the hearing officer noted that Dr. Casale's October 28, 1998 letter describing Danielle's mother's medical conditions was several months old as of the date of the April 15, 1999 hearing and that even without the home health aide services, Danielle's mother "adequately" cares for Danielle after school until the home health aide arrives at 12:00 a.m. Hearing Officer's Adjudication, p. 5. The undisputed evidence in the record and the hearing officer's own factual findings adopted by the Bureau do not support the denial of Danielle's request for the additional services.

At the hearing, Danielle's mother testified that she recently had a kidney transplant and must have another kidney transplant, that she had a chronic bleeding requiring transfusion and must undergo a hysterectomy, and that she also had a back problem. Danielle's mother further testified that when Danielle wakes up at 6:45 a.m., a caregiver must lift her from the bed, put her in the "hoya" lift, get her in the sling, pull her over with the

2. The hearing officer did not accept the testimony of the Department's witness that "[i]f the extra two hours requested were approved the home health aide would have two hours to do absolutely nothing." N.T., p. 10. The

Department's witness later admitted that she never met Danielle and was not fully aware of Danielle's conditions. When asked if Danielle was able to stand or sit independently, she replied, "I have no idea." N.T., p. 13.

hoya lift, move her over into the wheel-chair, brush her teeth, and bathe, dress and feed her; it is difficult for her to move Danielle, now weighing ninety-two pounds, from the bed to the wheelchair because of her medical conditions; and she was injured in November 1998, while picking Danielle up.

In his adjudication, the hearing officer accepted the testimony of Danielle's mother and Dr. Casale's October 28, 1998 letter describing her medical conditions and found:

> Appellant's mother has a history of a kidney transplant and chronic kidney problems. Appellant's mother also suffers from chronic abdominal pain and chronic gynecological bleeding. The physical rigors of caring for the Appellant child often aggravate the problems of Appellant's mother.

Findings of Fact No 7. The hearing officer also found that "[Danielle's] mother herself suffers from chronic medical conditions, making it difficult for her to care for the child," and that the Department approved the home health aide services for eight hours a day in December 1998 "because of Teresa Keenhold's medical complications." Hearing Officer's Adjudication, p. 4; Findings of Fact No. 8. In addition, the record does not reveal any evidence indicating that the medical conditions of Danielle's

mother have improved since December 1998.

Thus, the hearing officer's own findings establish the medical conditions of Danielle's mother which prevent her from caring for Danielle from 6:00 a.m. to 8:00 a.m. daily.[3] By concluding that the medical conditions of Danielle's mother were not adequately established, based solely on the date of Dr. Casale's letter, the hearing officer contradicted his own findings of her medical conditions. Hence, the Department's refusal to continue to provide Danielle the home health aide services for eight hours a day, seven days a week, as provided in December 1998 when her mother suffered the medical complications, is not justified.[4]

Since the record establishes that the additional two hours of daily home health aide services requested by Danielle is medically necessary and within her needs, the order of the Bureau is reversed to the extent that it affirmed the Department's denial of Danielle's request for the services for additional two hours a day from 6:00 a.m. to 8:00 a.m., seven days a week.

### O R D E R

AND NOW, this 13th day of January, 2000, the order of the Bureau of Hearings and Appeals (Bureau) in the above-captioned matter is reversed to the extent that the Bureau affirmed the decision of

---

3. The Bureau refused to review Danielle's request for the home health aide services for the additional two hours on weekends and holidays, stating that the testimony presented by both parties did not refer to the care to be given Danielle from 6:00 a.m. to 8:00 a.m. on weekends and holidays. The record establishes, however, that Danielle will require the same care of moving her from the bed to the wheelchair, brushing her teeth, bathing, dressing and feeding her in the morning even on weekends and holidays, and that such care is therefore medically necessary and within her needs.

4. The Department relies on the nursing help provided by Danielle's school from 9:00 a.m. to 3:00 p.m. during weekdays to argue that she already receives 13 hours of nursing help

requested by Dr. Bingham in his October 15, 1998 letter. It must be noted, however, that Dr. Bingham certified in the request form that the requested additional 2 hours of daily services were medically necessary. Moreover, Dr. Bingham stated in his letter that Danielle requires "the 13 hours nursing care 7 days a week," which would total 91 hours a week. Currently, Danielle receives a total of 72–hour nursing services a week: the home health aide services for 6 hours a day, 7 days a week provided by the Department, and the nursing services from her school for 6 hours a day, 5 days a week. With the requested additional 2 hours of services, 7 days a week, Danielle will receive 86 hours of services a week, less than requested by Dr. Bingham as medically necessary.

the Department of Public Welfare to disapprove home health aide services for additional two hours a day from 6:00 a.m. to 8:00 a.m., seven days a week, as requested by Danielle Keenhold, through her mother, Teresa Thrower–Keenhold. The Bureau's order is affirmed in other respects.