# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas J. Hufnagel,            :
          Petitioner            :
                                 :
             v.            :  No. 1840 C.D. 2016
                                 :  SUBMITTED:  June 5, 2017
Pennsylvania Game Commission,            :
          Respondent            :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
SENIOR JUDGE LEADBETTER                          FILED:  June 27, 2017

Thomas J. Hufnagel petitions for review of an order of the Pennsylvania Game Commission maintaining but reducing the revocation of his hunting and furtaking privileges anywhere in the Commonwealth, with or without a license, from a period of three years to a period of two years beginning July 1, 2016, and extending through June 30, 2018.  We affirm.

The pertinent facts are as follows.  While on patrol in December 2014, Wildlife Conservation Officer Byron Gibbs encountered Hufnagel on his property at 1671 Brent Road, Volant, PA, Lawrence County, and cited him with hunting through the use of bait as an enticement for game or wildlife, a violation of Section 2308(a)(8) of the Game and Wildlife Code (Code), 34 Pa. C.S. § 2308(a)(8), and hunting during deer firearms season from a blind without the appropriate fluorescent orange markings, a violation of 58 Pa. Code § 141.20(a)(2).  Although

Hufnagel pled guilty to these violations in January 2015, the Commission elected not to revoke his hunting and furtaking privileges as a collateral civil consequence of the convictions. October 17, 2016, Decision of the Commission, Finding of Fact (F.F.) No. 14. In an April 2015 warning letter, however, it advised him that any future baiting violation would result in the revocation of those privileges. *Id*., No. 15.

In November 2015, Officer Gibbs returned to Hufnagel's property during archery deer season to investigate a report of ongoing baiting activities and encountered him in a tree house/blind, with a half-full corn feeder hanging directly below the blind. An inspection of the interior of the blind revealed a rifle, a loaded cross bow, rattling antlers, a grunt call, urine based attract and an ozonic scent control device. *Id*., Nos. 16-21. Although Hufnagel stated that he was not engaged in hunting activities, Officer Gibbs cited him with several violations, including hunting with the use of bait. *Id*., Nos. 22 and 24. Ultimately, the magisterial district judge found Hufnagel guilty of only the baiting violation and imposed a fine and court costs in the amount of $534.50. *Id*., No. 25.

In March 2016, the Commission advised Hufnagel that it was revoking his privilege to secure a license or to hunt or take game or wildlife for a period of three years, beginning July 1, 2016. At Hufnagel's request, a hearing was held in July 2016 at which time the parties, with counsel, offered testimony and numerous exhibits in support of their respective positions. Witnesses included Officer Gibbs and Hufnagel and his wife. The hearing officer determined that the Commission did not abuse its discretion in deciding to revoke Hufnagel's privileges, concluding that it was authorized but not mandated to do so for such a period as the Commission determined. Conclusion of Law No. 3. Accordingly,

mindful of both mitigating and aggravating factors,[1] the hearing officer recommended that the proposed revocation be maintained but reduced to a period of two years. The Commission adopted the recommended decision and Hufnagel's petition for review is now before us for disposition.

On appeal, Hufnagel presents two issues: (1) whether Section 929 of the Code, 34 Pa. C.S. § 929, is unconstitutionally vague; and (2) whether there is substantial evidence to support Finding of Fact No. 15, providing that he had prior notice that his hunting/furtaking privileges would be suspended upon a future violation of hunting with the use of bait.[2]

Section 929(a) and (b) of the Code, entitled "Revocation or denial of license, permit or registration," provides:

> (a) General rule.—Except as otherwise provided in this title, *any hunting or furtaking license*, special license or permit or registration *granted under the authority of this title may be denied, revoked or suspended by the commission when the holder of the license*, permit or registration *is convicted of an offense under this title* or has acted contrary to the intent of the registration or permit, with each offense constituting a separate violation subject to separate revocation. *The commission may refuse to grant to that person any permit or registration and may deny any privilege granted by these*

---

[1] Mitigating factors included Hufnagel's background, community service, and lengthy period of time before 2014 with no record of violations. Aggravating circumstances included, *inter alia*, the fact that this constituted Hufnagel's second offense within a twelve-month period and that he involved his minor son in unlawful hunting activity. October 17, 2016, Decision of the Commission at 5 and 7.

[2] Substantial evidence is defined as such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Sigafoos v. Pa. Bd. of Prob. & Parole*, 503 A.2d 1076, 1079 (Pa. Cmwlth. 1986). It is irrelevant whether the record contains evidence to support findings other than those made by the fact finder; the critical inquiry is whether the record contains evidence to support the findings actually made. *Carbondale Area Sch. Dist. v. Fell Charter Sch.*, 829 A.2d 400, 404 (Pa. Cmwlth. 2003).

3

> *documents for a period not exceeding five years unless otherwise provided in this title.*
>
> . . . .
>
> (b) Regulations.—The commission may promulgate regulations specifying the procedures to be followed in denying, revoking or suspending any hunting and furtaking privileges, licenses, permits and registrations granted under the provisions of this title.

34 Pa. C.S. § 929(a) and (b) (emphasis added).

Hufnagel maintains that Section 929 is void for vagueness because the legislature failed to provide minimum guidance as to when the Commission should impose a civil penalty on anyone who violates the game laws, thereby resulting in arbitrary and discriminatory enforcement. He contends that those convicted of violating these laws have no way of knowing whether or not a violation will result in the loss of hunting privileges and cites cases in which courts found certain statutory provisions to be unconstitutionally void for vagueness. *See, e.g., Pa. State Bd. of Pharmacy v. Cohen*, 292 A.2d 277 (Pa. 1972) (holding that, where a pharmacist's license could be suspended based on a finding that he had engaged in "grossly unprofessional conduct," the act set forth thirteen specific prohibitions, and his conduct did not violate any of them, the board's interpretation that the prohibitions were mere guidelines and that it had discretion to determine on a case by case basis what constituted such conduct was unconstitutional); *Orwell Twp. Supervisors v. Jewett*, 571 A.2d 1100, 1103-04 (Pa. Cmwlth. 1990) (holding that, a junkyard ordinance permitting supervisors to deny a license on aesthetic considerations alone was unconstitutionally vague such that it could not afford a sufficient guide to assure uniform application).

In addition, Hufnagel cites the Commission's failure to promulgate regulations pursuant to Section 929(b) as further support for his position that the

statute is void for vagueness. He also rejects the Commission's argument that Standard Operating Procedure (SOP) No. 50.24 provides support for the proposition that its authority to revoke hunting privileges is not vague because the document provides guidance as to when a revocation may be imposed and the recommended duration of that revocation. The subject of SOP No. 50.24 is "revocation gauge," the recipients are "all game commission officers," the sender is the Commission's executive director, and it indicates that a second violation for baiting carries a recommended base license revocation period of two years. July 19, 2011, SOP No. 50.24 at 1 and 7; Reproduced Record (R.R.) at 244a and 250a. While Hufnagel acknowledges that SOP 50.24 provides guidance, he observes that there is no indication that it was provided to him or any other hunter and that, therefore, it could not have constituted notice to him.

In considering Hufnagel's arguments, we first observe that Section 929(a) provides, in relevant part, that the Commission may deny, revoke or suspend any license granted under this title upon conviction under this title for a period not exceeding five years. Hufnagel was convicted of hunting with the use of bait under Section 2308(a)(8) of the Code. Accordingly, there is no statutory ambiguity as to what behavior may result in a license revocation, a conviction under title 34, and the maximum period of that revocation, five years.

Further, it is irrelevant that the Commission did not promulgate regulations pursuant to Section 929(b) of the Code or distribute its revocation-gauge guidelines for game commission officers (SOP No. 50.24) to hunters. There is simply no constitutional requirement that penalty guidelines be published. In a case where the Public Utility Commission used penalty guidelines to assess a fine against a cab company, we held that "the guidelines offer no more than a

5

generalized penalty schedule which affords the Commission a measure of flexibility in assessing civil penalties against violators, in accordance with the authority granted to the Commission by virtue of [the applicable statutory provision entitled civil penalties for violations]." *Metro Transp. Co. v. Pa. Pub. Util. Comm'n*, 525 A.2d 24, 27 (Pa. Cmwlth. 1987). Such is the situation in the present case involving the Game Commission, the civil penalty provision in the Game and Wildlife Code found at Section 929(a), and the recommended revocation gauge guidelines set forth in SOP No. 50.24.

Moreover, the Commission's practice of sending warning letters to first-time offenders in lieu of notices of revocation does not render the statutory provision invalid. The purpose of these letters may be to afford first-time offenders a second chance and/or to serve as a deterrent against future violations. In any event, the fact that the Commission exercises its discretion regarding first-time offenders is consistent with the legislature's language in Section 929(a), which, in pertinent part, provides: "[A]ny hunting or furtaking license, special license or permit or registration granted under the authority of this title *may* be denied, revoked or suspended by the commission when the holder . . . is convicted of an offense under this title[.]" 34 Pa. C.S. § 929(a) (emphasis added). Of course, Hufnagel's second issue concerns whether there was substantial evidence to support a finding that he received the warning letter. We turn now to that issue.

As an initial matter, we conclude that there is no requirement that a hunter be warned of any consequences. Section 929 of the Code provides that the collateral civil consequence of a maximum revocation of five years may occur upon conviction of a specific offense such as baiting and contains no language requiring a warning letter as a prerequisite to the imposition of such consequences.

6

Further, there is no support for any argument that a failure to warn a hunter of the statutory collateral civil consequences of a guilty plea should result in the invalidation of a revocation. Courts when considering somewhat analogous driver licensing laws have held that a failure to advise a defendant that a guilty plea may result in the collateral civil consequence of suspension or revocation of his operating privileges does not invalidate a guilty plea or preclude the imposition of the collateral civil consequence. *E.g., Spagnoletti v. Dep't of Transp., Bureau of Driver Licensing*, 90 A.3d 759, 769 (Pa. Cmwlth. 2013). Accordingly, it is irrelevant whether the April 2015 warning letter was sent or received, because such a warning is not necessary. In any event, Hufnagel's argument that the disputed fact-finding lacks substantial evidence is without merit.

Hufnagel contends that there is no substantial evidence to support Finding of Fact No. 15, which provides that the Commission advised him "in writing, by letter dated April 3, 2015, that any future violation of hunting while using artificial or natural bait 'will result in the revocation of your hunting and furtaking privileges within the Commonwealth of Pennsylvania.'" In support of his argument, Hufnagel references his testimony that he never received the warning letter, the absence of a certificate of mailing, and Officer Gibb's testimony that he lacked personal knowledge as to whether it was sent. Hufnagel asserts that, had he received the warning letter, he would have appealed the citation for his first baiting violation instead of paying the fine.

In considering this issue, we note that the April 2015 letter was part of the packet that comprised Commonwealth Exhibit #1 and also included, *inter alia*, past and present citations and the Commission's March 2016 notice advising Hufnagel of the pending revocation. Following counsel for Hufnagel's

7

contemporaneous and sole objection "to the stuff that's obviously not pertinent to the one citation that brings us here today[,]"[3] the hearing officer accepted Commonwealth Exhibit #1 into evidence. Later in the hearing, Hufnagel's counsel pursued a line of questioning whereby Officer Gibbs testified that a warning letter "should have been sent" pursuant to the Commission's procedures for a first-time baiting violation but that he lacked personal knowledge as to whether it was actually sent. July 26, 2016, Hearing, Notes of Testimony (N.T.) at 26; R.R. at 108a.

In rejecting Hufnagel's substantial evidence argument, we note that the evidence reflects that the warning letter bears the same address as other letters, none of which he denied receiving, and two of which he acted upon.[4] In addition, Commonwealth Exhibit # 1 is analogous to the packet of documents that PennDOT attorneys present, certified and under seal, as their C-1 exhibits in driver licensing appeals. *See Thorne v. Dep't of Transp., Bureau of Driver Licensing*, 727 A.2d 1205, 1207 (Pa. Cmwlth. 1999) (holding that, the legislative purpose behind the enactment of Section 6103 of the Judicial Code, 42 Pa. C.S. § 6103, is to allow a method by which official records may be introduced into evidence without the need to bring in the records custodian to court to authenticate the records). Here, the exhibit was certified and under the seal of the Chief of the Administrative Division for the Bureau of Wildlife Protection of the Pennsylvania Game Commission.

---

[3] July 26, 2016, Hearing, Notes of Testimony (N.T.) at 14; R.R. at 96a.

[4] *Id*., Commonwealth Exhibit # 1: April 3, 2015, warning letter and March 4, 2016, notice of revocation; R.R. at 214a and 217a *and* October 17, 2016, Order of the Commission; R.R at 271a.

Moreover, even though Hufnagel construes Officer Gibb's testimony as indicative that the letter was never sent, it also could be interpreted as establishing the Commission's procedure in situations involving first-time baiting violations. In that regard, the hearing officer considered the testimony and documentary evidence and rejected Hufnagel's assertion that he did not receive the April 2015 warning letter. *See* F.F. No. 30 ("Hufnagel . . . was on notice that a subsequent violation of 34 Pa. C.S. § 2308(a)(8) . . . could result in a revocation of his privilege to hunt or take game or wildlife . . . ."). It is not the role of this Court to substitute our judgment for that of the fact finder and to reweigh the evidence.

Accordingly, we affirm.

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas J. Hufnagel,     :
       Petitioner :
            :
     v.      :  No. 1840 C.D. 2016
            :
Pennsylvania Game Commission, :
      Respondent :

## **O R D E R**

AND NOW, this 27th day of June, 2017, the order of the Pennsylvania Game Commission maintaining but reducing the revocation of the hunting and furtaking privileges of Thomas J. Hufnagel anywhere in the Commonwealth, with or without a license, from a period of three years to a period of two years is hereby AFFIRMED.

           _____
           **BONNIE BRIGANCE LEADBETTER,**
           Senior Judge