629 A.2d 308

**Mary V. MILLER–TURNER, Petitioner,**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 23, 1993.

Decided July 26, 1993.

Mary V. Miller–Turner, pro se.

No appearance, for respondent.

Lorrie McKinley, for intervenor, Community Legal Services, Inc.

Before CRAIG, President Judge, and PALLADINO, J., and KELTON, Senior Judge.

KELTON, Senior Judge.

Mary Miller–Turner (Petitioner) petitions for review of the October 14, 1992 order of the Department of Public Welfare (DPW),[1] Office of Hearings and Appeals (OHA), upholding the decision of Community Legal Services (CLS) to deny her legal services in connection with a civil lawsuit against Mellon Bank. We affirm.

Petitioner has raised eleven issues. The issue that is dispositive, however, is whether DPW erred in upholding CLS's decision not to represent Petitioner in her employment discrimination lawsuit against Mellon Bank. CLS had determined that there was insufficient legal merit to her case.

■ Our scope of review of a DPW adjudication is limited to determining whether necessary findings of fact are supported by substantial evidence, an error of law was made, or whether any constitutional rights of the petitioner were violated. *Peace v. Department of Public Welfare*, 93 Pa.Commonwealth Ct. 300, 501 A.2d 1164 (1985).

The relevant facts are as follows. Petitioner worked for Mellon Bank from April 23, 1991 to September 18, 1991. Finding of Fact No. 1. During that time, Mellon issued several oral reprimands concerning her tardiness and work quality. Finding of Fact No. 3. Mellon terminated Petitioner's employment on September 18, 1991, on the basis of the "Employee Warning" contained in a June 6, 1991 written

---

1. DPW has filed a notice of non-participation in this case. Community Legal Services has filed a brief as intervenor.

"Performance Alert" issued to Petitioner. Findings of Fact Nos. 4, 5.

On March 13, 1992, Petitioner filed a complaint with the Pennsylvania Human Relations Commission, wherein she alleged, *inter alia*, claims of racial discrimination and wrongful termination. On March 23, 1992, Petitioner sought the services of CLS in her case against Mellon Bank.

In a March 26, 1992 written notice, CLS advised Petitioner of its decision not to represent her in the Mellon Bank case. · CLS cited 12 Pa.B. 2009–10 (1982) as support for its decision, the pertinent provision of which provides as follows:

> 3–1–153. A written advance notice of service reduction or termination may be based on the professional judgment of the Title XX service provider that:
>
> .   .   .   .   .
>
> (2) the service is no longer appropriate for achieving the particular goal. . . .

12 Pa.B. 2009 (1982).

A certain percentage of CLS's funding is derived from social service block grants made pursuant to Title XX of the Social Security Act (Act), 42 U.S.C. § 1397a. Pursuant to the Pennsylvania regulations implementing the Act, specifically, Section 3–1–39 of 12 Pa.B. 2004, legal service by lawyers and/or aides under their supervision is to be provided in order to resolve or to prevent civil legal problems in employment and civil rights cases. Under Section 3–1–42, 12 Pa.B. 2004, legal services are to be provided if:

> (1) the provision of service is consistent with the American Bar Association Code of Professional Responsibility and/or the Disciplinary Rules of the Supreme Court of Pennsylvania; and
>
> (2) the case is not fee-generating, or the case is not one in which the Commonwealth of Pennsylvania has an obligation to provide counsel to the indigent through another source identified by statute.

The CLS letter which accompanied its notice of decision provides in part as follows:

As you know, intake at CLS is very high. We see many clients each day and only have the resources to take on a limited number of cases. In order to keep our client lists down to a manageable level, we can only take on those cases that we believe to be meritorious. In the opinion of the Employment Project, your case lacks sufficient merit for our representation.

Specifically, employment discrimination cases are difficult to prove. In your case you allege racial discrimination, but you have not provided us with evidence sufficient to establish that your employer's reason for terminating you, poor performance, was related to your race. Further, the fact that the supervisor who terminated you was a black female, detracts from the strength of your allegations. Most significantly, however, you told me that your supervisor seemed to hold a personal grudge against you which was not race-related; though it is unfair that a personal grudge should lead to your separation from employment, in this case the grudge is not supportive of your allegation of race discrimination. For all of these reasons, CLS cannot represent you in this case.

Despite the Employment Project's decision not to represent you in this matter, I did call Mr. Quinn of Mellon's Human Resources Department in Pittsburgh. Mr. Quinn would not speak to me because I was a legal representative, but referred me to Frances Tennant from Mellon's legal department instead. Ms. Tennant informed me that Mr. Quinn investigated your termination and determined that you were properly separated from your position for performance problems. He further determined, that according to bank policy, Mellon would not consider you for future positions due to your termination for performance reasons. I questioned Ms. Tennant concerning your dismissal without proper progressive discipline and she informed me that during an employee's first six months with Mellon, standard progressive discipline does not apply. Rather, Mellon's policy

dictates that an employee in his or her first six months must only be given an Early Performance Alert (EPA) regarding performance problems, before the bank may discharge him or her. According to Ms. Tennant, and confirmed by you in our interview, you were given such an EPA for lateness. As this is considered part of your performance, Mellon terminated you according to its own policies. If you proceed with your race discrimination case at the Pennsylvania Human Relations Commission, I would encourage you to ask the fact finder assigned to your case to verify Mellon's policies regarding progressive discipline.

CLS's March 26, 1992 Letter to Petitioner, July 23, 1992 Hearing, Exhibit C–3.

Accordingly, CLS in its the notice stated that "[w]e can no longer provide service to you because the service is no longer appropriate for meeting the goal as your case lacks sufficient merit for representation by Community Legal Services." R.R. at 24. Petitioner appealed that termination of Title XX services on April 25, 1992. R.R. at 25.

In a September 28, 1992 adjudication, the Hearing Officer denied Petitioner's appeal on the basis of the testimony and documentary evidence presented. The Hearing Officer made the following statement:

> the hearing officer concludes that the [Petitioner] has, in fact, failed to present evidence to prove that her accusations are valid. By the [Petitioner's] own admission, she has a suit pending against IRS [a former employer]; she has sought the services of CLS for the last four years in employment suits against various companies and the [Petitioner] is unable to present witnesses to support her allegations. The [Petitioner] has also signified by signing the Performance Alert of June 6, 1991 that she understood the conditions of employment [with Mellon Bank].

R.R. at 61.

The Director of the OHA affirmed the Hearing Officer's decision and an appeal to this Court followed.

In *Peace v. Department of Public Welfare,* 93 Pa.Commonwealth Ct. 300, 501 A.2d 1164 (1985), CLS declined to represent Peace in a wrongful termination action against SEPTA. CLS based its decision on the information contained in Peace's application, its independent investigation as to why SEPTA dismissed him, an unsuccessful union grievance hearing and the two dismissals of his prior federal lawsuits. We concluded that substantial evidence existed to support CLS's decision and held that it was fully justified in refusing to provide legal services to a client to proceed with a frivolous lawsuit.

In addition, citing *Albright v. Department of Public Welfare,* 71 Pa.Commonwealth Ct. 114, 454 A.2d 1149 (1983), we noted in *Peace* that "in the context of a CLS denial of legal services, that lawyers are not only justified in refusing to represent a client in a matter the lawyer knows to be without legal merit but that the lawyer is mandated not to do so." *Peace,* 93 Pa.Commonwealth Ct. at 306, 501 A.2d at 1168. *See also Craig v. Pennsylvania Board of Probation and Parole,* 93 Pa.Commonwealth Ct. 586, 502 A.2d 758 (1985).

Similarly, we conclude that substantial evidence exists in the case *sub judice* to support CLS's refusal to represent Petitioner on the basis that her racial discrimination and wrongful termination suit against Mellon Bank had no merit. With regard to Petitioner's allegations of discrimination, it was adduced at the hearing that Petitioner, her supervisor and one-third of her work unit were African–American, thus making it more difficult to substantiate her allegations. July 23, 1992 Hearing, N.T. at 20–1. Significantly, Petitioner herself was unable to present any evidence that came close to establishing a prima facie case of racial discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Specifically, she was unable to name any potential witnesses to substantiate or corroborate her allegations against Mellon. N.T. at 45–6.

Further, CLS did intercede on Petitioner's behalf by contacting Mellon Bank and inquiring into her allegations. Specifically, it was established that the progressive discipline

policy did not apply to probationary employees employed for less than six months, such as Petitioner. Based on its investigation, CLS concluded that Petitioner's case lacked merit.

Lastly, Petitioner admitted that she committed various errors while employed by Mellon. N.T. at 30. She disagreed, however, with her former employer as to the severity of those errors.

We find that DPW did not err in upholding CLS's decision not to represent Petitioner. There is ample evidence to support the Hearing Examiner's finding that Petitioner's lawsuit against Mellon Bank had no merit.

█ It is clear that agencies with limited funding, such as CLS, must have some discretion in assessing the merit of the hundreds of potential cases that walk through their portals. Criteria such as the likelihood of success on the merits, prior experience with the same clients, assessment of a client's credibility and a responsibility to adhere to ethical considerations must come into play when CLS is forced by limited funding to make reasonable judgment calls. *See Wetzel v. Commonwealth of Pennsylvania, Department of Welfare,* 69 Pa.Commonwealth Ct. 541, 451 A.2d 1067 (1982) (holding that, due to the availability of county resources and needs, legal service agencies must be accorded a certain amount of latitude to develop systems of case priorities and exclusions.)

For the above reasons, we affirm.

### ORDER

AND NOW, July 26, 1993, the order of the Department of Public Welfare, is hereby affirmed.