**Ulyesses B. ADAMS, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 26, 2001.
Decided May 21, 2001.
Reconsideration Denied July 31, 2001.

Ulyesses B. Adams, petitioner, pro se.

Mary C. Walsh, Philadelphia, for respondent.

Before PELLEGRINI, LEADBETTER, Judges, and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Ulyesses B. Adams (Adams) appeals from a final order of the Department of Public Welfare, Bureau of Hearings and Appeals (Bureau) that upheld the decision of the Community Legal Services, Inc. (CLS) denying his application for legal services. We affirm.

The record reveals the following relevant facts. Adams was employed by the Department of Navy at the Philadelphia Naval Shipyard (Employer) until he was discharged in 1986. In 1986, Adams unsuccessfully appealed the termination of his employment. CLS is a private non-

profit corporation providing legal services to the poor under the contracts entered into between the Pennsylvania Legal Services and the Department of Public Welfare. The operation of CLS is funded pursuant to Title XX of the Social Security Act, 42 U.S.C. § 1397.

On June 9, 1999, Adams applied for legal services with CLS to pursue a new hearing before the federal Merit Systems Protection Board on his 1986 appeals from the termination of his employment. After its numerous interviews with Adams, contact with Employer and review of the documents submitted by Adams, CLS concluded that his claim lacked sufficient merit. In a letter sent to Adams on July 21, 1999, CLS summarized its assessment of his claim as follows in relevant part:

> Even though you stated that the hard hat aggravated your scalp condition, a navy doctor disagreed and cleared you from any restriction on March 17, 1986. You continued to refuse to wear a hard hat and the Navy prevented you from working because you were not 'ready and available to work' with the proper equipment (the hard hat). The January 31–March 16 (a 45–day) suspension and July 25th termination were already appealed by you in 1986, and you were not successful. There does not appear to be any legal basis to force the MSPB to give you another hearing on what has already been the subject of three separate appeals and hearings, especially since the January 31st termination was converted into a suspension on which you did have a hearing. Due to this conversion, your January 31st termination no longer existed in the eyes of the MSPB; therefore, there was no reason to hold a hearing concerning this disciplinary action. Furthermore, the Navy Yard did notify you of this conversion when you received the personnel action notice informing you of your suspension. Therefore, the MSPB did not

> violate your due process rights by failing to provide you with a hearing concerning the January 31st termination; instead, you had a hearing in an appeal concerning the suspension which began on January 31st. Unfortunately, you lost that appeal.
>
> . . . .
>
> Since the decision in August of 1986, relating to your appeal of the enforced leave status, you have incorrectly believed that you were entitled to back pay for more than the one month period of time from October to November of 1985, and that you were entitled to be reinstated. For many years, you wrote many letters, and attempted to enforce the decision of August of 1986 by filing motions to accomplish this. You have taken this matter to the appellate court of the Federal Circuit and tried to petition the U.S. Supreme Court. Unfortunately, that incorrect belief is not premised on any kind of recognized legal basis.

In the PW 1011 Form mailed on July 21, 1999, CLS notified Adams of its decision to deny his application for Title XX-funded legal services. CLS stated in that form that his claim did not have sufficient merit and that handling his case would therefore violate the Code of Professional Responsibility and/or the Disciplinary Rules of the Pennsylvania Supreme Court. Adams was also advised of his right to appeal the denial to the Bureau. Adams appealed CLS' decision to the Bureau, and a hearing was held before the hearing officer.

■ After the hearing, at which Adams and CLS' supervising attorney testified and submitted numerous documents, the hearing officer upheld CLS' denial of Adams' application for legal services. The hearing officer concluded that Adams had exhausted all available legal remedies, that he failed to advance any legal basis for his request for a new hearing on his 1986

appeals from the termination of his employment, and that CLS properly exercised its professional judgment in denying his application. The Bureau subsequently affirmed the hearing officer's decision. Adams' appeal to this Court followed.[1]

■ States participating in the programs funded under Title XX of the Social Security Act have the considerable flexibility in determining the eligibility for available social services. *Wetzel v. Department of Public Welfare*, 69 Pa.Cmwlth. 541, 451 A.2d 1067 (1982). Title XX-funded legal services are provided in Pennsylvania, if they are, *inter alia*, "consistent with the American Bar Association Code of Professional Responsibility and/or the Disciplinary Rules of the Supreme Court of Pennsylvania." Section 3–1–42(1) of 12 Pa. B. 2291 (1982).

■ In *Polk County v. Dodson*, 454 U.S. 312, 323, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), the United States Supreme Court held:

> Although a defense attorney has a duty to advance all colorable claims and defenses, the canons of professional ethics impose limits on permissible advocacy. It is the obligation of any lawyer— whether privately retained or publicly appointed—not to clog the courts with frivolous motions or appeals.

Rule 3.1 of the Rules of Professional Conduct, adopted by the Pennsylvania Supreme Court on October 16, 1987 to be effective on April 1, 1988, provides:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.[2]

A claim advanced in a proceeding is considered frivolous if it lacks any basis in law and fact. *Pennsylvania Department of Transportation v. Workmen's Compensation Appeal Board (Tanner)*, 654 A.2d 3 (Pa.Cmwlth.1994); *Craig v. Pennsylvania Board of Probation & Parole*, 93 Pa. Cmwlth. 586, 502 A.2d 758 (1985).

■ In reviewing CLS' decision to deny the application for Title XX-funded legal services, we must also keep in mind that CLS has only limited funding for its operations. Therefore, CLS "must have some discretion in assessing the merit of the hundreds of potential cases that walk through [its] portals." *Miller–Turner v. Department of Public Welfare*, 157 Pa. Cmwlth. 318, 629 A.2d 308, 311 (1993), *appeal denied*, 538 Pa. 638, 647 A.2d 513 (1994). When forced into making reason-

1. This Court's scope of review of the Bureau's adjudication is limited to determining whether the adjudication is in accordance with the law, does not violate constitutional rights, and is supported by substantial evidence in the record. *Keenhold v. Department of Public Welfare*, 744 A.2d 377 (2000).

2. In its brief, the Department of Public Welfare incorrectly cites, as applicable, DR 7–102(A)(2) of the Code of Professional Responsibility, which was superseded by the Rules of Professional Conduct adopted by the Pennsylvania Supreme Court in 1987. DR 7–102(A)(2) provided that a lawyer shall not "[k]nowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law." The current Rule 3.1 of the Rules of Professional Conduct adopts an objective test of whether the basis for the litigation "is not frivolous," whereas DR 7–102(A)(2) applied where the lawyer knew, or it was obvious, that the litigation was frivolous. *See* Rule 3.1, Code Comparison.

able judgments due to the limited funding, CLS may consider various factors, including "the likelihood of success on the merits, prior experience with the same clients, assessment of a client's credibility and a responsibility to adhere to ethical considerations." *Id.*

 In this matter, the evidence presented at the hearing showed that Adams had already been provided the hearings in 1986 on his unsuccessful appeals from the termination of his employment. Adams did not present any relevant evidence to support his request for another hearing made almost fourteen years after his unsuccessful challenges to the termination.[3] After the extensive investigation of Adams' claim, CLS made the professional judgment that his request for another hearing before the Merit Systems Protection Board did not have any legal basis. Where, as here, a lawyer knows that his or her client's case lacks any legal merit, the lawyer is not only justified in refusing to represent the client but also mandated to do so. *Peace v. Department of Public Welfare*, 93 Pa.Cmwlth. 300, 501 A.2d 1164 (1985).

Accordingly, the order of the Bureau is affirmed.

### ORDER

AND NOW, this 21st day of May, 2001, the order of the Department of Public Welfare, Bureau of Hearings and Appeals in the above-captioned matter is affirmed.

---

**3.** Without further discussion in his brief, Adams states in the petition for review that the hearing officer did not provide him a fair hearing because the hearing officer completely ignored his testimony and the documents presented by him. However, the hearing officer was not required to accept the evidence presented by Adams in making the necessary findings. Moreover, Adams does not dispute the relevant evidence presented by CLS at the hearing, which amply supports the hearing officer's decision to uphold CLS' denial of his application.